82 A.3d 205

**Wesley Torrance KELLY**

v.

**STATE of Maryland.**

**No. 26, Sept. Term, 2013.**

Court of Appeals of Maryland.

Dec. 23, 2013.

---

6. *Myer v. State,* 403 Md. 463, 477, 943 A.2d 615 (2008) (quoting 5 J.H. Wigmore, Evidence in Trials at Common Law § 1367 (3d ed.1940)).

408

Juan P. Reyes, Asst. Public Defender (Paul B. DeWolfe, Public Defender, Baltimore, MD), on brief, for petitioner.

Brian S. Kleinbord, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for respondent.

Argued before BARBERA, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, McDONALD, and IRMA S. RAKER (Retired, Specially Assigned), JJ.

BARBERA, C.J.

For eleven days in April 2010, police conducted tracking of Petitioner Wesley Torrance Kelly's vehicle, using a global positioning system ("GPS") device attached to the vehicle's exterior. As a result of that GPS tracking, officers made observations and collected information they used to obtain warrants to search Petitioner's home, a separate residence in downtown Baltimore, Petitioner's vehicle, and three pawn shops. The State sought to use evidence obtained during execution of the warrants in separate prosecutions of Petitioner for charges arising out of burglaries that occurred in Howard County and Anne Arundel County.

Petitioner filed pretrial motions in both the Howard County and the Anne Arundel County Circuit Courts to suppress all evidence obtained as the result of what the officers learned through their tracking of his vehicle, including evidence obtained pursuant to the execution of the search warrants. Petitioner argued that the tracking of his vehicle's movements, as well as the initial placement of the tracking device, violated the Fourth Amendment, thereby requiring suppression of all evidence resulting directly, or derived, from the tracking. In both cases, the motions were denied. Petitioner was convicted of various charges arising out of the two cases. He appealed both judgments of conviction.

During the pendency of the appeal of those convictions in the Court of Special Appeals, the Supreme Court of the United States decided the case of *United States v. Jones.* —— U.S. ——, 132 S.Ct. 945, 181 L.Ed.2d 911 (2012). In a decision that many believed to be a break from the longstanding test for determining when police conduct is deemed a "search" for Fourth Amendment purposes,[1] the Supreme

---

1. For the 45 years preceding *Jones,* the reasonable expectation of privacy test, enunciated in Justice Harlan's concurring opinion in *Katz*

Court held in *Jones* that "the Government's installation of a GPS device on a target's vehicle, and its use of that device to monitor the vehicle's movements, constitutes a 'search' " under the Fourth Amendment. 132 S.Ct. at 949.

The Court of Special Appeals consolidated the appeals and, in a reported opinion, *Kelly v. State*, 208 Md.App. 218, 56 A.3d 523 (2012), affirmed both judgments of conviction. The Court recognized that the GPS tracking of Petitioner's vehicle fell within the purview of the new law announced in *Jones* and, pursuant to the holding of that case, was a search conducted in violation of the Fourth Amendment. *Kelly*, 208 Md.App. at 243, 56 A.3d 523. The Court of Special Appeals reasoned that then-applicable law in Maryland, namely *United States v. Knotts*, 460 U.S. 276, 103 S.Ct. 1081, 75 L.Ed.2d 55 (1983), permitted the tracking of a vehicle on the public streets.[2] *Kelly*, 208 Md.App. at 248, 56 A.3d 523. From that legal premise, the Court of Special Appeals further reasoned that, under *Davis v. United States*, —— U.S. ——, 131 S.Ct. 2419, 2423–24, 180 L.Ed.2d 285 (2011), in which the Supreme Court held that "searches conducted in objectively reasonable reliance on binding appellate precedent are not subject to the exclusionary rule," Petitioner was not entitled to suppression

---

*v. United States*, 389 U.S. 347, 360, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), was the predominant analysis courts employed when considering whether a search had taken place under the Fourth Amendment. In *Katz*, the Court "enlarged its then-prevailing focus on property rights by announcing that the reach of the Fourth Amendment does not 'turn upon the presence or absence of a physical intrusion.' " *Jones*, 132 S.Ct. 945, 955 (2012) (Sotomayor, J. concurring). Justice Scalia's opinion for the Court in *Jones* revived that common-law trespassory test, which, he explained, was augmented, not displaced, by the reasonable expectation of privacy test. 132 S.Ct. at 952.

**2.** As we shall see, the Supreme Court held in *Knotts* that police monitoring of a signal put out by a beeper, which the police lawfully had placed on a container transported on the public streets, was neither a search nor a seizure within the contemplation of the Fourth Amendment, because such monitoring did not invade any legitimate expectation of privacy the respondent had in the movement of the vehicle on the public streets. 460 U.S. at 285, 103 S.Ct. 1081.

of the evidence obtained as the result of that unlawful search. *Kelly,* 208 Md.App. at 248, 56 A.3d 523.

For the reasons that follow, we affirm the judgment of the Court of Special Appeals.

I.

The following facts were adduced at the separate suppression hearings held in the Howard County and Anne Arundel County cases.[3]

Suspecting Petitioner's involvement in a series of commercial burglaries, officers of the Howard County Police Department Property Crimes Section requested that officers of the Repeat Offender Proactive Enforcement ("ROPE") Section assist in conducting surveillance of Petitioner. In response to this request, the ROPE Section began conducting covert visual surveillance of Petitioner. Additionally, on April 2, 2010, Sergeant Duane Pierce attached a GPS tracking device to Petitioner's Chevrolet Trailblazer, which at the time was parked down the road from Petitioner's home at 1118 Harwall Road, a public street in Baltimore County.

Sergeant Pierce explained the mechanics of the GPS tracking device the ROPE Section used. He described the GPS tracker as

an electronic device that is much like an everyday cell phone, it has a cell phone component and it also has a GPS component in it, and those two devices communicate with both satellites and the cellular portion to determine where that unit is and it will give you a latitude and longitude [of] ... where that unit is currently at.

Sergeant Pierce referred to the device as "self-contained," meaning that it is powered by a battery and does not in any way interfere with the operation of the vehicle. The device is attached to the frame of a vehicle by magnets. It is activated

---

3. In material respect, the evidence adduced at each of these hearings was identical.

prior to installation and, once activated, stores location data to its own internal memory.

Officers may access this historical data and may also activate what Sergeant Pierce referred to as "live-tracking," which displays the tracker's location in real time.[4] As "live-tracking" drains the device's battery more rapidly than regular operation, Sergeant Pierce testified that he only activated this mode when officers needed Petitioner's close-to-present location. The tracking device may be programmed to send alerts to a designated cell phone. Sergeant Pierce explained that he initially programmed the device to send an alert to his cell phone whenever Petitioner's vehicle approached Howard County.[5] Later, he re-programmed the device to send an alert to his cell phone whenever Petitioner's vehicle went into motion. From the time of its installation on April 2 until April 5, 2010, the tracking device recorded to its internal memory the locations of Petitioner's vehicle. During that period, detectives did not access that historical data nor did they engage in "live-tracking."

On April 5, 2010, at approximately 4:00 a.m., the GPS tracking device notified Sergeant Pierce that Petitioner's vehicle had entered Howard County. Sergeant Pierce dispatched the ROPE detectives to the approximate location of Petitioner's vehicle and activated "live-tracking" to update them on the vehicle's movements. Advised that the vehicle was in the area of Riverwood Drive and Old Columbia Road, Detective James Laffin was the first officer to catch sight of the vehicle. Detective Laffin did not follow the vehicle; instead, he stopped to check the businesses in the area for signs of burglary. The other responding officers followed Petitioner's vehicle until it entered Montgomery County. Detective Dar-

---

**4.** Sergeant Pierce clarified that the tracking device displays its location on a two- to five-second delay.

**5.** Sergeant Pierce clarified that the tracking device has the capability to recognize a box approximating the shape of the county, not the precise boundaries of the jurisdiction.

shan Luckey observed that a man matching Petitioner's description was driving the vehicle.

At the site of Advanced Programs, Inc. ("API"), 7125 Riverwood Road in Columbia, Detective Laffin noted that the building's entrance appeared to be "unsecured," with pry marks and damage to the door. He called for officers to respond and investigate the apparent burglary. Detective Matthew Mergenthaler met with an employee of API and obtained a list, with serial numbers, of all inventory that was missing from the building. That list included two Hewlett Packard printers, two computer monitors, and four boxes containing hard drives, keyboards, and computer mouses.

Detectives had to use the GPS device to re-locate the vehicle later that morning. They learned that the vehicle was parked in the parking lot of Carroll Manor Elementary School, which Detectives Luckey and Laffin observed upon arrival to be a construction site where Petitioner was working. Two hours after their arrival, the detectives approached the vehicle to see what was inside of it. Detective Luckey observed "several large boxes" in the back and a Hewlett Packard printer manual on the front passenger seat. Shortly thereafter, the detectives observed Petitioner approach the vehicle. He removed a box from the vehicle, placed "an object that appeared to be a computer monitor" in the box, and replaced the box in the vehicle. He then sat in the vehicle driver's seat for 20 minutes before returning to work.

In the afternoon, Petitioner left the school construction site in his vehicle, and the officers followed. They followed him first to his home on Harwall Road. They then followed him to a residence on Saratoga Street in Baltimore City, which he entered with a key.[6] He came out of that residence carrying two "computer boxes," which he placed in his vehicle. The officers next followed him to the intersection of Hollins and Stockton Streets in Baltimore City, where they observed him

---

6. That location was, apparently, Petitioner's brother's residence.

exit his vehicle to speak for a few moments with a group of people.

The officers then followed Petitioner to the Gold Trading Center Pawn Shop in Baltimore City. They observed him park in front of the shop, remove a "big box" from his vehicle, and enter the shop. They observed him walk between the shop and the vehicle two times, carrying boxes of different sizes back and forth. Officers next followed Petitioner to Shine Corner, Inc., another pawn shop in Baltimore City. They observed him enter the shop carrying three "large . . . boxes." When he emerged from the shop, the officers followed Petitioner back to the Saratoga Street residence. They observed him carry "two large Hewlett Packard computer boxes, one small box that was open on the top and one long skinny type of box" inside the residence. The officers next followed him to the Edmondson Village Pawn Shop in Baltimore City. They observed Petitioner enter the shop carrying "paperwork." When he emerged from the shop, the officers followed Petitioner back to his home on Harwall Road, then terminated visual surveillance for the day.

On April 6, 2010, at approximately 4:30 a.m., the GPS tracking device notified Sergeant Pierce that Petitioner's vehicle was moving. Sergeant Pierce informed ROPE Section detectives that Petitioner's vehicle was traveling on Interstate 170 toward Howard County, and the officers caught up to the vehicle, which they followed to the Westview Promenade Shopping Center in Frederick. Detective Luckey observed Petitioner walking around one of the buildings, carrying a plastic bag. Detective Laffin exited his vehicle to follow Petitioner on foot, but when Petitioner saw the detective he returned to his vehicle and drove away.

The detectives followed Petitioner to a commercial business park on Pegasus Court in Frederick, where they observed him stop his vehicle outside multiple closed businesses. Detective Laffin observed Petitioner walk from one of the buildings to his vehicle and drive away. Detectives Luckey and Kuczynski followed Petitioner while Detectives David Abuelhawa and

Laffin stayed behind to check businesses for signs of burglary. Noting two attempted break-ins, they called the Frederick County Sheriff's Department to investigate.

Sergeant Pierce testified that, between April 6 and 12, 2010, detectives may have checked the voltage on the tracking device to ensure that the device's battery was not drained, but they did not access historical data nor activate "live-tracking" for the purpose of locating Petitioner. On April 12, 2010, at approximately 4:12 a.m., the GPS tracking device notified Sergeant Pierce that Petitioner's vehicle was moving. He informed the detectives that the vehicle was traveling on Interstate 695 toward Glen Burnie, and they attempted to catch up to the vehicle. Sergeant Pierce informed the detectives that the vehicle was located in the parking lot of the Chesapeake Square Shopping Center, and the detectives proceeded to the shopping center parking lot, where they observed the vehicle parked in front of the Casual Male XL store. Detective Abuelhawa exited his vehicle to follow Petitioner on foot. In doing so, Detective Abuelhawa noted that the front door to the Casual Male XL store had been "smashed out" and observed Petitioner enter the store with an empty plastic bag and exit the store with the bag full of clothing.

Detective Abuelhawa instructed the other detectives in the parking lot to "do a vehicle take down." The other detectives pulled their vehicles beside Petitioner's, but he quickly got into his vehicle and drove off. Observing that the rear hatch of Petitioner's vehicle was open and that neither headlights nor taillights were illuminated, Detective Luckey attempted to stop Petitioner's vehicle, but Petitioner's vehicle sped up in response. The ROPE Section detectives pursued the vehicle from Ritchie Highway into Baltimore City. When the officers lost sight of Petitioner's vehicle, Sergeant Pierce informed them of its location using GPS, twice, before the officers found the vehicle, abandoned, in an alley.

Property Crimes Section detectives prepared search warrant applications for Petitioner's home, the Saratoga Street

residence, Petitioner's vehicle, and the three pawn shops. ROPE Section officers conducted visual surveillance of Petitioner's home while Warrant Section officers conducted visual surveillance of the Saratoga Street residence. Warrant Section officers took Petitioner into custody that afternoon as he left the Saratoga Street residence.

Upon execution of the warrants, officers recovered from Petitioner's vehicle a shirt from Casual Male XL. From Gold Trading Center, officers seized a Hewlett Packard printer and a computer monitor. From the Saratoga Street residence, officers seized computer units. The serial numbers of these items matched the serial numbers of the items API reported as missing to Detective Mergenthaler.[7]

Petitioner was charged in the Circuit Court for Howard County with second-degree burglary, theft, and malicious destruction of property in connection with the burglary of Advanced Programs and in the Circuit Court for Anne Arundel County with second-degree burglary, theft, and malicious destruction of property in connection with the Casual Male XL burglary. In both cases, he filed motions to suppress all evidence obtained as the result of the GPS tracking.

### The Anne Arundel County Proceedings

On October 15, 2010, the Circuit Court for Anne Arundel County held a hearing on Petitioner's motion to suppress. Counsel for Petitioner argued that the officers' act of installing the GPS device on the exterior of Petitioner's vehicle itself amounted to a search. Further, he argued, officers' subsequent tracking of the vehicle using the device was also a search. Although "[a] person traveling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another," *Knotts*, 460 U.S. at 281, 103 S.Ct. 1081, Petitioner's counsel argued that the "cumulative effect" of observing public movements over the

---

7. All items that the officers seized from Petitioner's residence were merely "indicia of occupancy." They recovered nothing from the Edmondson Village Pawn Shop or Shine Corner, Inc.

long term is "greater than the parts." He argued that the GPS tracking was so "intertwined" with the visual surveillance that Petitioner was entitled not only to suppression of any GPS data the State might seek to introduce, but also the observations the detectives made as a result of their use of the GPS technology, as well as the evidence seized pursuant to the six search warrants. The Circuit Court denied the motion to suppress, explaining its ruling:

I just need something. I need some case, some law, something that says it would be illegal for the police under these circumstances to put the GPS unit on the truck. And I feel like without that I can't take any next step toward the conclusion that you want to reach, although I certainly sympathize with your situation. It seems like just sort of as an average person would really be—feel that that's [a] personal [affront] you might say to have something placed on the car without their knowledge and for someone to be aware of their movements in society seems, you know, a little suspect, but without having any law to say that that's the case, and my understanding is there is no warrant requirement for the GPS, so if there's no warrant requirement and they didn't have a warrant I don't see a problem under current law. . . .

On January 4, 2011, Petitioner pled not guilty to second-degree burglary but waived his right to a jury trial and was convicted on an agreed upon statement of facts. The Circuit Court sentenced Petitioner to ten years' incarceration.

### The Howard County Proceedings

On November 19, 2010, the Circuit Court for Howard County held a hearing on Petitioner's motion to suppress. The State argued that Petitioner had no reasonable expectation of privacy in his movements on public streets and that the "addition of technology to assist" officers in their observations of those movements was insignificant to the analysis; thus, there had been no search. Counsel for Petitioner [8] acknowl-

---

8. Petitioner was represented by different attorneys in the two cases.

edged the clear holding of *Knotts*, but she contended that the expectation of privacy "changes" depending upon the duration of the surveillance; a person would not, she asserted, "expect the public ... to notice [his] movements" for that long a period, "to put together the evidence of the behavior, the patterns, the habits." Thus, counsel argued, officers' long-term surveillance amounted to a search, and Petitioner was entitled to "suppression of all items and all information received as a result of the use of" the GPS technology. The Circuit Court denied the motion to suppress, explaining its ruling:

> I believe that the *Stone* [*v. State*, 178 Md.App. 428, 941 A.2d 1238 (2008) ], case is the Maryland case that's on point and that is supported by *U.S. v. Knotts*, for the proposition that the first question is, is there a reasonable expectation of privacy that society is prepared to recognize under the *Katz* test. And *Stone* stands for the proposition that a person traveling in an automobile on a public thoroughfare has no reasonable expectation of privacy in his movements from one place to another. And that by driving on the public roads one voluntarily conveys, to anyone wishing to look, his progress and his route and therefore there's no reasonable expectation of privacy and therefore there's no Fourth Amendment implications. It is not a search under the Fourth Amendment to install this device magnetically to the bottom frame of the automobile.

On December 1, 2010, after a two-day trial, Petitioner was convicted by a jury of theft. The Circuit Court sentenced him to ten years' incarceration.

### The Appeal

Petitioner appealed his convictions to the Court of Special Appeals, where the cases were consolidated for the purpose of appeal. Relying on the good-faith exception to the exclusionary rule announced in *Davis*, 131 S.Ct. at 2423–24 ("searches conducted in objectively reasonable reliance on binding appellate precedent are not subject to the exclusionary rule"), the Court of Special Appeals affirmed the suppression courts'

rulings. *Kelly,* 208 Md.App. at 248, 56 A.3d 523. Our brethren on the intermediate appellate court, relying on *Davis* and a decision of this Court applying *Davis, Briscoe v. State,* 422 Md. 384, 30 A.3d 870 (2011), concluded that officers could reasonably rely on "the rationale of *Knotts, i.e.,* that the owners of vehicles did not have a reasonable expectation of privacy in their movement on a public highway," to authorize warrantless GPS tracking. *Kelly,* 208 Md.App. at 248, 56 A.3d 523.

We granted a petition for a writ of certiorari to answer the following questions, as Petitioner has posed them:

1. Did the trial courts err in denying Petitioner's motions to suppress evidence obtained as a result of the warrantless placement and subsequent tracking of a global positioning system ("GPS") device on Petitioner's vehicle over a period of 11 days?

2. Did the Court of Special Appeals incorrectly interpret and apply the Supreme Court's holding in *Davis v. United States,* —— U.S. ——, 131 S.Ct. 2419, 180 L.Ed.2d 285 (2011) and this Court's holding in *Briscoe v. State,* 422 Md. 384, 30 A.3d 870 (2011), when it held that the good faith exception to the exclusionary rule applied to the circumstances in the case at bar where no "binding appellate precedent" existed that authorized the placement and continuous tracking of a GPS device for the purposes of establishing probable cause to arrest?

II.

In reviewing the rulings of the suppression courts, we rely solely upon the record developed at the suppression hearings. *Lee v. State,* 418 Md. 136, 148, 12 A.3d 1238 (2011). We view the evidence and inferences that may be drawn therefrom in the light most favorable to the party who prevails on the motion, here, the State. *Id.* We defer to the factual findings of the suppression courts, "and uphold them unless they are shown to be clearly erroneous." *Id.* (quoting *State v. Luckett,* 413 Md. 360, 375 n. 3, 993 A.2d 25 (2010)). We,

however, make an independent appraisal of the constitutionality of a search, "by reviewing the relevant law and applying it to the facts and circumstances of this case." *Lee,* 418 Md. at 148–49, 12 A.3d 1238 (quoting *Luckett,* 413 Md. at 375 n. 3, 993 A.2d 25).

The Fourth Amendment, applied to the states through the Fourteenth Amendment, protects against unreasonable searches and seizures. *See, e.g., Lewis v. State,* 398 Md. 349, 360–61, 920 A.2d 1080 (2007) (citations omitted). Searches conducted without a warrant are presumptively unreasonable. *Henderson v. State,* 416 Md. 125, 148, 5 A.3d 1072 (2010). The remedy for an unlawful search is the suppression of evidence obtained as a result of that search. *Mapp v. Ohio,* 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). This remedy is known as the "exclusionary rule."

Courts, however, do not redress every Fourth Amendment violation by applying the exclusionary rule. *United States v. Calandra,* 414 U.S. 338, 348, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). This is because the text of the Fourth Amendment does not provide for the suppression of evidence. *Davis,* 131 S.Ct. at 2426; *Arizona v. Evans,* 514 U.S. 1, 10, 115 S.Ct. 1185, 131 L.Ed.2d 34 (1995). Suppression is not an individual right, but rather a judicial creation with the express purpose of deterring future misconduct on the part of law enforcement officers. *Herring v. United States,* 555 U.S. 135, 139–40, 141, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009). Accordingly, courts will not suppress evidence where law enforcement officers act with a reasonable good-faith belief that their conduct is lawful. *United States v. Leon,* 468 U.S. 897, 909, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). This principle is known as the "good-faith exception" to the exclusionary rule. The good-faith exception applies to a variety of situations. *See, e.g., Arizona v. Evans,* 514 U.S. at 4, 14, 115 S.Ct. 1185 (applying the good-faith exception to evidence seized pursuant to an arrest effected in reliance on outdated computer record of warrant where incorrect information resulted from clerical error on the part of court employee); *see also Herring,* 555

U.S. at 140, 144, 129 S.Ct. 695 (extending application of the *Evans* exception to error on the part of police employee); *Illinois v. Krull*, 480 U.S. 340, 343, 345, 349, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987) (applying the exception to evidence seized in search conducted in good-faith reliance on a statute authorizing warrantless administrative searches, later found unconstitutional).

▮ If, as occurred during the pendency of the appeal in the present case, the Supreme Court announces a new rule of criminal procedure, then that new rule applies "to all cases, state or federal, pending on direct review or not yet final." *Griffith v. Kentucky*, 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). Thus, absent application of the good-faith exception to the exclusionary rule, criminal defendants are permitted, on appeal, to "invoke ... newly announced rule[s] of substantive Fourth Amendment law as a basis for seeking relief." *Davis*, 131 S.Ct. at 2431. The Supreme Court has made plain by its holding in *Davis* that "searches conducted in objectively reasonable reliance on binding appellate precedent are not subject to the exclusionary rule." 131 S.Ct. at 2423–24. *See also Briscoe*, 422 Md. 384, 391, 30 A.3d 870 (applying *Davis* ).

The State does not disagree with Petitioner that, by operation of the Supreme Court's recent *Jones* decision, the warrantless tracking of Petitioner's vehicle violated the Fourth Amendment. Petitioner and the State part company, however, over the question of whether suppression of the fruits of that tracking is required; in other words, whether, as in *Davis* and *Briscoe*, the officers who conducted the GPS tracking of Petitioner's vehicle reasonably relied on then-binding precedent in Maryland.

Petitioner argues that the *Davis* good-faith rule does not apply in this case because, here, unlike in *Briscoe*, there is no binding, pre-*Jones* precedent in Maryland permitting warrantless tracking of public vehicular travel. The State counters that the *Davis* good-faith exception does apply, because binding precedent in Maryland at the time of the search, namely

*Stone,* 178 Md.App. 428, 941 A.2d 1238, specifically authorized the GPS tracking conducted in the present case. For reasons we shall explain, we agree with the State that there was binding appellate precedent in Maryland authorizing GPS tracking at the time officers installed the device on Petitioner's vehicle, but we find that authority in the Supreme Court's *Knotts* case, on which the Court of Special Appeals relied in *Stone.*

## III.

 We accept at the outset of our analysis the State's concession that, under *Jones,* the Howard County detectives' attachment and use of the GPS device in this case is a search under the Fourth Amendment. *Jones,* 132 S.Ct. 945, 949 ("the Government's installation of a GPS device on a target's vehicle, and its use of that device to monitor the vehicle's movements, constitutes a 'search' "). By retrospective application of *Jones,* therefore, the tracking of Petitioner's vehicle without a proper warrant violated the Fourth Amendment. Our task is to examine Maryland law pre-*Jones* to determine whether there was binding appellate precedent in Maryland authorizing the officers to attach the GPS device to Petitioner's vehicle and track the vehicle with this technology without a warrant. If so, then, under *Davis* and *Briscoe,* the evidence obtained as a result of this tracking is not subject to the exclusionary rule.[9]

The parties' dispute focuses upon what may serve as "binding appellate precedent," as the term was used in *Davis.* In *Briscoe,* we drew the following rule from *Davis:* "operation of the exclusionary rule is suspended only when the evidence seized was the result of a search that, when conducted, was a

---

**9.** The State argues that, in the event this Court holds that the *Davis* good-faith exception does not apply in this case, suppression is still inappropriate because "the evidence admitted against [Petitioner] was sufficiently attenuated from an unlawful use of the GPS device." *Wong Sun v. United States,* 371 U.S. 471, 487–88, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). In light of our conclusion on the question of the applicability of *Davis,* we need not address this argument.

'police practice' specifically authorized by the jurisdiction's precedent in which the officer operates." 422 Md. at 406, 30 A.3d 870. Petitioner considers this Court to have adopted a "narrow" interpretation of *Davis* by making this statement in *Briscoe.*

For support of that contention, Petitioner seizes upon the phrase "specifically authorized" and argues that this language requires the precedent on which officers rely to approve precisely the action they wish to take, and the technology they plan to use, for the search to fall under the ambit of *Davis.* Petitioner further maintains that a "broad" interpretation of *Davis* would encourage law enforcement officers to "push the limits of established constitutional boundaries where the status of the law is unclear." Petitioner points to Justice Sotomayor's concurring opinion in *Davis,* in which she cautioned against applying the *Davis* good-faith exception in cases where officers rely on unsettled law. 131 S.Ct. at 2435. He also cites cases in which courts have rejected *Davis* arguments where there was an absence of precedent on the specific practice of GPS tracking, *e.g., United States v. Martin,* 712 F.3d 1080, 1082 (7th Cir.2013), or where law enforcement officers relied on "persuasive or well-reasoned precedent, . . . a growing trend in decisions, or . . . situations in which a plurality, majority, or even overwhelming majority of circuits agree," *United States v. Ortiz,* 878 F.Supp.2d 515, 539 (E.D.Pa.2012).

As it is the State's position that there does exist binding appellate authority in Maryland particularly allowing the use of GPS tracking, the State does not devote much of its argument to delineating the bounds of the Supreme Court's holding in *Davis.* The State argues, however, that adopting Petitioner's interpretation of *Davis* would undermine the purpose of the good-faith exception to the exclusionary rule by "requir[ing] too much of officers in the field" who should not be expected to concern themselves with "byzantine nuances of Fourth Amendment doctrine."

▮ The State has the better part of the argument. We did not adopt in *Briscoe* a more narrow rule than that undergirding the *Davis* decision itself—the police practice at issue must have been specifically authorized by the jurisdiction's precedent. Maryland courts, of course, must and do follow the precedent established by the caselaw of the United States Supreme Court, in resolving Fourth Amendment claims. At the time of the search at issue in this case, *Knotts* provided the prevailing Fourth Amendment law, binding on Maryland, that allowed the use of a mechanical device, attached to the exterior of a vehicle, to track that vehicle's movements in public.

In *Knotts*, the Court employed a reasonable expectation of privacy analysis, *see Katz v. United States*, 389 U.S. 347, 360, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), to determine whether officers had conducted a search under the Fourth Amendment, by attaching a beeper to a container of chloroform in order to track the vehicle in which the container had been placed. *Knotts*, 460 U.S. at 277, 281, 103 S.Ct. 1081. The Court held that there had been no search under the Fourth Amendment, as "[a] person traveling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another." *Id.* at 281, 285, 103 S.Ct. 1081. The Court continued, a person traveling on public streets "voluntarily convey[s] to anyone who want[s] to look the fact that he [is] traveling over particular roads in a particular direction, the fact of whatever stops he ma[kes], and the fact of his final destination when he exit[s] from public roads onto private property." *Id.* at 281–82, 103 S.Ct. 1081.

No decision of this Court or the Court of Special Appeals, since the Supreme Court's issuance of *Knotts* and throughout the many years leading up to the Supreme Court's issuance of *Jones,* has limited the application of *Knotts* to the use of beepers, or, more recently, extended its application to the use of GPS devices, to track vehicular movements in public. Indeed, the Court of Special Appeals, in *Stone,* relied explicitly on *Knotts* in stating that police tracking of a vehicle's travels

using GPS technology "could not be a Fourth Amendment violation." 178 Md.App. at 448, 941 A.2d 1238.

 Petitioner asserts that neither *Knotts* nor *Stone* can be read to authorize specifically the use of GPS tracking, as those cases did not address the constitutionality of the installation of the GPS tracking device or of "continuous tracking over an extended period of time to gather evidence of criminality." We agree with, and therefore adopt, as our answer to that concern, the Court of Special Appeals's statement that "binding precedent does not require that there be a prior appellate case directly on point, *i.e.*, factually the same as the police conduct in question." *Kelly,* 208 Md.App. at 248, 56 A.3d 523.

At the time of the search at issue in this case, without the benefit of *Jones,* we would have applied *Knotts*—which, as the Court of Special Appeals found in *Stone,* was at the time, and had been since 1983, Maryland law—to resolve the question of the constitutionality of GPS tracking of a vehicle on public roads. We can expect no more from law enforcement officers. Petitioner is correct that no Maryland appellate decision has held expressly that the attachment and use of a GPS tracking device is permissible under the Fourth Amendment. Nevertheless, just as the Court of Special Appeals applied *Knotts,* pre-*Jones,* when considering the relevance of testimony on the subject of GPS tracking of a vehicle on public streets in *Stone,* so too could police officers reasonably rely on *Knotts,* pre-*Jones,* in affixing a GPS tracking device to the vehicle of a person under their investigation for the purpose of conducting surveillance.

 We therefore hold that, before *Jones,* binding appellate precedent in Maryland, namely *Knotts,* authorized the GPS tracking of a vehicle on public roads. The Howard County detectives acted in objectively reasonable reliance on that authority when they conducted their GPS tracking of Petitioner's vehicle, and the *Davis* good-faith exception to the exclusionary rule applies. Petitioner is not entitled to the

suppression of evidence. Consequently, we affirm the judgment of the Court of Special Appeals.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED; COSTS TO BE PAID BY PETITIONER.**