*Dwayne Steven Spence v. State of Maryland*, No. 7, September Term 2014

**CONSTITUTIONAL LAW — FOURTH AMENDMENT — SEARCH INCIDENT TO ARREST —** The warrantless search of the digital information on an arrestee's cell phone incident to a lawful arrest, save for case-specific exigent circumstances, is unreasonable in violation of the Fourth Amendment. Under this rule, established in *Riley v. California*, 134 S. Ct. 2473 (2014), the police officer may examine only the physical aspects of a cell phone in the interest of officer safety. The search of the most recent text messages on an arrestee's cell phone went beyond the mere physical search of the phone and violated the arrestee's Fourth Amendment rights.

**CONSTITUTIONAL LAW — FOURTH AMENDMENT — GOOD FAITH DOCTRINE —** Courts generally will not suppress evidence where law enforcement officers act in objectively reasonable reliance on a warrant or statute or, as was decided in *Davis v. United States*, 131 S. Ct. 2419 (2011), binding precedent under which their conduct is lawful. This principle is known as the good-faith exception to the exclusionary rule. The police officer's warrantless search of a cell phone incident to the defendant's lawful arrest, prior to the Supreme Court's decision in *Riley v. California*, 134 S. Ct. 2473 (2014), was done in reasonable reliance on then-binding precedent, *United States v. Robinson*, 414 U.S. 218 (1973). By application of the good faith doctrine, the information obtained from the cell phone is not suppressed.

IN THE COURT OF APPEALS
OF MARYLAND

No. 7

September Term, 2014

DWAYNE STEVEN SPENCE

v.

STATE OF MARYLAND

Barbera, C.J.,
*Harrell
Battaglia
Greene
McDonald
Watts
Raker, Irma S. (Retired, Specially
Assigned)
          JJ.

Opinion by Barbera, C.J.

Filed: July 27, 2015

*Harrell, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

Petitioner Dwayne Spence was convicted in the Circuit Court for Caroline County of possession with intent to distribute marijuana, possession of marijuana, and possession of drug paraphernalia. The principal issue we decide in this case is whether the court was required to deny Petitioner's motion to suppress text messages that the police obtained during the search of his cell phone incident to his lawful arrest.

Petitioner appealed the judgment of conviction to the Court of Special Appeals and, while the case was pending in that court, filed a petition for writ of certiorari, which we granted. We then stayed all proceedings in this case until the United States Supreme Court issued its decisions in *Riley v. California*, *cert. granted*, 134 S. Ct. 999 (2014), and *United States v. Wurie*, *cert. granted*, 134 S. Ct. 999 (2014). On June 25, 2014, the Supreme Court issued a consolidated opinion in those two cases. *Riley v. California*, 134 S. Ct. 2473 (2014).

Following the parties' submission of their briefs, we heard arguments in the case on the same day as two other cases, *Demby v. State*, No. 11, Sept. Term 2014, and *Sinclair v. State*, No. 43, Sept. Term 2014. The three cases present the common question of whether, in light of the Supreme Court's decision in *Riley*, the respective petitioners were entitled to the suppression of data obtained by the police during a warrantless search of the cell phones incident to a lawful arrest. For reasons we explain later in this opinion, we hold that the trial court in the present case properly denied the motion to suppress the data obtained from Petitioner's cell phone.

I.

*The Suppression Hearing, Trial, and Appeal*

Petitioner sought suppression of text messages, found on his cellphone at the time of his arrest, that the State ultimately used in convicting him of several drug-related offenses. Sergeant Nancy Nagel ("Sergeant Nagel") of the Caroline County Sheriff's Office testified as the sole witness for the State at the hearing on the motion.

Sergeant Nagel testified that, during the early morning hours of January 13, 2011, she responded to a report of a robbery at a mobile home in a trailer park in Preston, Maryland. After completing her interview with the robbery victims, Sergeant Nagel noticed fresh footprints in the snow outside of the victims' home, leading from a doorstep a few mobile homes away directly to the robbery victims' home. While Sergeant Nagel and at least one other officer who had arrived on the scene were investigating the footprints, a woman stepped out from the home where the footprints began and identified herself as Tonya LaLone ("Ms. LaLone").

Sergeant Nagel asked Ms. LaLone if she could come inside to speak about the robbery that had just occurred. Ms. LaLone consented and, as they stepped into the home, Sergeant Nagel asked who else, if anyone, was present. Ms. LaLone informed Sergeant Nagel that her two parents, who owned the home, and her three-year-old son were present. She then pointed to a room where, she said, her son was asleep. Sergeant Nagel heard a loud noise emanating from that room. She asked again who was in the room. Sergeant Nagel then drew her weapon, evidently prompting Ms. LaLone to say that her boyfriend, Dwayne Steven Spence ("Petitioner"), was inside the bedroom. Sergeant Nagel ordered him out.

2

Sergeant Nagel testified that, as Petitioner exited the bedroom, he had in his hand a cell phone and was using it. Sergeant Nagel and at least one other officer ordered Petitioner to put his hands in the air. He obeyed, keeping his cell phone in his hand. Sergeant Nagel then asked Petitioner to sit on a chair. As Petitioner sat down, he continued using the phone. Sergeant Nagel asked Petitioner to place the phone on an end table, which he did. At that time, Sergeant Nagel re-holstered her gun.

The officers frisked Petitioner to ensure that he was not armed. Sergeant Nagel then interviewed Ms. LaLone and Petitioner and asked Ms. LaLone to wake her parents. With everyone together, Sergeant Nagel informed them that there had been a robbery in the trailer park and she was searching for shoes matching the imprints outside and the stolen prescription pills. Sergeant Nagel obtained consent to search the home.

While searching the bedroom from which Petitioner had exited, Sergeant Nagel found a black wallet propped against an aquarium and, behind the wallet, a clear bag containing what she recognized as marijuana. The wallet contained Petitioner's identification card. Inside a cabinet in the room were additional bags of marijuana, drug paraphernalia, and a small digital scale. Nagel did not find any evidence linking Petitioner to the robbery.

The police placed Ms. LaLone and Petitioner under arrest. Sergeant Nagel decided to search the cell phone Petitioner had been using when he walked out of the bedroom. She did that "in an attempt to um, possibly discover any other kind of evidence that could be destroyed[.]" Sergeant Nagel described what she did next: "I activated the screen and the message folder. When I opened up the message folder that's when I found . . . located text

3

messages from the previous night leading into that morning . . . [w]here there were text messages that were indicative of the distribution of [controlled dangerous substances]." Sergeant Nagel also saw two messages related to the robbery she was investigating. Sergeant Nagel could discern that those two messages had not been read or answered. Petitioner informed Nagel that he had no knowledge of the robbery; he was likely asleep when those text messages came in; and the incoming messages were from his brother's phone.

Sergeant Nagel testified that, once she "realized that, that phone had evidentiary value[,]" she "went ahead and seized the phone." She expressed concerns about either remote or instantaneous wiping of the cell phone.[1] The police later obtained a warrant to search the data in the cell phone.

Petitioner also testified at the suppression hearing. His version of events surrounding the search of the cell phone was almost identical to that of Sergeant Nagel. He clarified that the phone was a "flip phone," new to him at the time of his arrest. He added that the cellphone was a "smartphone" with internet capabilities and a touch screen.

The court denied the motion to suppress the drug-related text messages that Sergeant Nagel read at the time of Petitioner's arrest as well as the additional text messages that were produced later, as the result of the search warrant. The court ruled that the warrantless search of the cell phone was reasonable under the Fourth Amendment. The court reasoned

---

[1] A cell phone can be wiped remotely when, by request to the cellular provider, the provider resets the phone to factory settings, erasing all data that had been in the device.

4

that the warrantless search was limited to the few text messages that Sergeant Nagel had read. Moreover, based on Sergeant Nagel's observing Petitioner earlier using the phone, the sergeant reasonably could be concerned about destruction of evidence and that Petitioner might have been notifying others about the presence of law enforcement. The court concluded that the exigency of the situation—an armed robber on the loose and police suspicion that Petitioner may have been communicating with the perpetrator or a third party about police presence—validated the immediate search of the phone.

On August 24, 2011, Petitioner appeared before the court and, in a colloquy with the trial judge, waived his right to a jury trial. Following that colloquy, the parties proceeded to trial based on an agreed upon statement of facts. Included in that statement were facts relating to the text messages that Petitioner sought to suppress. Petitioner was convicted and sentenced, and this appeal followed.

*The Search Incident to Arrest Exception—Then and Now*

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." In furtherance of that protection, it has long been understood that searches made without a warrant are presumptively unreasonable. *Kyllo v. United States*, 533 U.S. 27, 32 (2001). Yet, over time, the Supreme Court has recognized, as reasonable under the Fourth Amendment, a number of exceptions to the warrant requirement. One such exception, often relied upon by law enforcement, permits officers to conduct a search incident to a lawful arrest. The origin of this exception is found in *Chimel v. California,* 395 U.S. 752 (1969).

5

In *Chimel*, the Supreme Court defined the contours of the search incident to arrest exception and, in doing that, identified officer safety and prevention of evidence destruction as the rationales for the exception. The Supreme Court explained that, when an officer makes an arrest, "it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated." *Id*. at 763. It is also "reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction[,]" and for the same reasons to search "the area into which an arrestee might reach in order to grab a weapon or evidentiary items[.]" *Id.* at 763. The Court concluded that the potential for any of this to occur during an arrest provides "ample justification" to search "the arrestee's person and the area 'within his immediate control.'" *Id*.

The Supreme Court further developed the scope of the search incident to arrest exception in *United States v. Robinson*, 414 U.S. 218 (1973). Robinson had been arrested for driving on a suspended license. The arresting officer, while conducting a pat down of Robinson, felt an object in his coat pocket that the officer could not identify. The officer removed that object—a crumpled cigarette packet—opened it, and found capsules of heroin inside. *Id.* at 220-23. The Court upheld the warrantless search as a proper search incident to Robinson's arrest. The Court emphasized that "[t]he authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability

6

in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect." *Id*. at 235. Instead, a "custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification." *Id*.

*Robinson* created a bright line rule—eliminating the need for police officers and courts to assess on a case-by-case basis the danger to the arresting officer or the likelihood of destruction of evidence.

> It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment."

*Id*. at 235.

The Supreme Court left intact the search incident to arrest doctrine, as explicated in *Robinson*, until deciding *Riley v. California*, 134 S. Ct. 2473 (2014).[2] The Court held, in an opinion consolidating two cases, *Riley* and *United States v. Wurie*, that searches of cell phones fall outside the permitted scope of the search incident to arrest, thereby creating a sea-change in this area of Fourth Amendment jurisprudence. *Id*. at 2480.

---

[2] Until the Supreme Court decided *Riley v. California*, the only modification the Court made to the search incident to arrest exception was to rework the exception as it had been applied for many years to searches of vehicles incident to arrest. In *Arizona v. Gant*, 556 U.S. 332 (2009), the Court rejected the rule established in *New York v. Belton*, 453 U.S. 454 (1981), insofar as the *Belton* rule had allowed an automatic search of the passenger area of the vehicle after the arrest of a recent occupant the vehicle. Now, under *Gant*, "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." 556 U.S. at 351.

7

In *Riley*, the officer stopped Riley for driving on an expired registration tags. During the stop, the officer arrested Riley, searched him, and found a cell phone and other evidence on his person linking him to a criminal gang. The officer's search of the contents of the cell phone revealed messages that he believed further connected Riley to a gang. *Id.* at 2480. In *Wurie*, an officer had observed Petitioner Wurie make an apparent drug sale from his car. The officer arrested him and took him to the police station. While at the police station, Wurie's flip phone kept ringing and with each ring, "my house" would appear on the phone's main screen. Officers eventually opened Wurie's flip phone, observed a picture on the screen, and searched through the phone to find the phone number associated with "my house." *Id.* at 2481.

The Supreme Court held, in both cases, that the warrantless searches of the cell phones did not fall within the search incident to arrest exception and, consequently, were done in violation of Riley's and Wurie's Fourth Amendment rights. *Id.* at 2484-85. The Court, observing that today's cell phones are "based on technology nearly inconceivable just a few decades ago, when . . . *Robinson* [was] decided[,]" *id.* at 2484, concluded that the search of a cell phone's data cannot be justified by either officer safety or prevention of the destruction of evidence, the two traditional rationales that make a warrantless search incident to arrest reasonable under the Fourth Amendment, *id.* at 2485-88. Consequently, in the context of cell phone searches, application of *Chimel*, as further explicated in *Robinson*, does not comport with the dictates of the Fourth Amendment; therefore, "officers must generally secure a warrant" before conducting "searches of data on cell phones[.]" *Id.* at 2485.

8

The Court was careful to note that concern for officer safety justifies a limited physical inspection of a cell phone, within the scope of the search incident to arrest exception: "Law enforcement officers remain free to examine the physical aspects of a phone to ensure that it will not be used as a weapon—say, to determine whether there is a razor blade hidden between the phone and its case." *Id*. Moreover, "[t]o the extent dangers to arresting officers may be implicated in a particular way in a particular case, they are better addressed through consideration of case-specific exceptions to the warrant requirement, such as the one for exigent circumstances." *Id*. at 2486; *see also id*. at 2494. Nevertheless, "[o]nce an officer has secured a phone and eliminated any potential physical threats . . . data on the phone can endanger no one." *Id*. at 2485.

*The Parties' Contentions*

Petitioner and the State agree that, under the general rule announced in *Riley*, Sergeant Nagel's search of Petitioner's cell phone does not come within the permitted scope of a search incident to a lawful arrest. The State does not concede, however, that Petitioner is entitled to suppression of the data the police captured from his cell phone.

The State advances two arguments in support of the court's refusal to exclude the data captured from Petitioner's cell phone. First, under the exigent circumstances exception to the warrant requirement (of which the *Riley* Court spoke as an exception to the general rule prohibiting warrantless cell phone searches), Sergeant Nagel acted reasonably when she "activated" the screen of the cell phone, opened the message folder, and read the drug-related text messages. Second, even if the search of the cell phone violated Petitioner's Fourth Amendment rights, it was properly admitted into evidence

9

under the "good faith" exception to the exclusionary rule. We need not address the first of the State's arguments, because we agree with the second.

*The Good Faith Doctrine*

The good faith doctrine provides that the exclusionary rule does not apply to evidence the police seize in objectively reasonable reliance upon a search warrant or then-controlling statutory or case law. The doctrine developed in the Fourth Amendment jurisprudence as a response to the so-called exclusionary rule. Broadly described, the exclusionary rule requires that evidence obtained in violation of the Fourth Amendment must be excluded from trial.

The exclusionary rule is a "'prudential' doctrine, created by [the Court] to 'compel respect for the constitutional guaranty.'" *Davis v. United States*, 131 S. Ct. 2419, 2426 (2011). "Exclusion is 'not a personal constitutional right,' nor is it designed to 'redress the injury' occasioned by an unconstitutional search." *Id.* at 2426 (quoting *Stone v. Powell*, 428 U.S. 465, 486 (1976)). Because "the [exclusionary] rule's sole purpose . . . is to deter future Fourth Amendment violations," *id*. (citing *Herring v. United States*, 555 U.S. 135, 141 (2009); *United States v. Leon*, 468 U.S. 897, 921 n.22 (1984); *Elkins v. United States*, 364 U.S. 206, 217 (1960)), the Supreme Court's "cases have thus limited the rule's operation to situations in which this purpose is 'thought most efficaciously served." *Id.* at 2426 (quoting *United States v. Calandra*, 414 U.S. 338, 348 (1974)).

The Court in *Leon* held that the exclusionary rule does not apply to evidence police seize in "objectively reasonable reliance" upon a search warrant later determined to be invalid. 468 U.S. at 922. Then, in *Illinois v. Krull*, 480 U.S. 340, 349-50 (1987), the Court

10

extended application of the good faith doctrine to actions that police take in reasonable reliance on a subsequently invalidated statute. The trend continued with *Arizona v. Evans*, 514 U.S. 1 (1995), in which the Court applied the doctrine to law enforcement's reasonable reliance on information about a warrant, in a judiciary-maintained database, and then, with *Herring*, 555 U.S. at 137 (holding that misinformation contained in a police-maintained database, as the result of an "isolated" instance of negligence by a police employee, did not require exclusion of evidence seized by police who reasonably relied on that misinformation). Most recently, in *Davis*, the Supreme Court held that the exclusionary rule does not apply to police action taken in reasonable reliance on then-binding appellate precedent.

We twice have applied the good faith doctrine, as was done in *Davis*, 2419 S. Ct. at 2423-24, to "searches conducted in objectively reasonable reliance on binding appellate precedent[.]" *See Kelly v. State*, 436 Md. 406 (2013), *cert. denied*, 135 S. Ct. 401 (2014); *Briscoe v. State*, 422 Md. 384 (2011). We understood, moreover, that the binding precedent upon which the officer relied need not be "factually the same as the police conduct in question." *Kelly*, 436 Md. at 426.

In *Briscoe*, we held that when the police seized evidence from a locked glove compartment, prior to the Supreme Court's decision in *Arizona v. Gant*, 556 U.S. 332 (2009), they acted in reasonable reliance on then-binding precedent established by *New York v. Belton*, 453 U.S. 454 (1981). 422 Md. at 409-10. In *Kelly*, the police, prior to the Supreme Court's decision in *United States v. Jones*, 132 S. Ct. 945 (2012), attached a Global Positioning System (GPS) to Kelly's car, without a warrant, and tracked its

11

movements for 11 days.  We recognized that "no Maryland appellate decision has held expressly that the attachment and use of a GPS tracking device is permissible under the Fourth Amendment." *Kelly*, 436 Md. at 426.  Yet, the police acted in reasonable reliance on the then-binding precedent of *United States v. Knotts*, 460 U.S. 276 (1983), which allowed the use of a mechanical device, attached to the exterior of a vehicle, to track that vehicle's movement in public.  *Id.*

The State contends that Sergeant Nagel, in searching the phone initially and reading those text messages, was acting in good faith reliance on then-controlling authority in Maryland, namely, *Robinson* and the cases in Maryland applying *Robinson* and its progeny. *E.g.*, *Carter v. State*, 367 Md. 447, 460-62 (2002); *Colvin v. State*, 299 Md. 88, 97-98 (1984).  We agree.

*Riley* no doubt represents the Supreme Court's effort to adjust Fourth Amendment jurisprudence to the quickly evolving digital age.  The *Riley* Court understood, though, that its holding represents a significant departure from what had long been the search incident to arrest rule, as described and applied in *Robinson* and its progeny.  *See Riley*, 134 S. Ct. at 2484 (acknowledging that "a mechanical application of *Robinson* might well support the warrantless searches at issue here.").  The categorical rule established by *Robinson* has been followed in Maryland.  It follows that Sergeant Nagel acted in objectively reasonable reliance on then-binding authority when she conducted the warrantless search of the cell phone, and the *Davis* good-faith exception to the exclusionary rule applies to the search.

At least one other Circuit Court of Appeals has held similarly, *see United States v. Gary*, NO. 13-1788, 2015 WL 3814617 (7th Cir. June 19, 2015) (applying the *Davis* good

faith doctrine to uphold a pre-*Riley* search of a cell phone incident to a lawful arrest, as governed by the arresting officer's objectively reasonable reliance upon *Robinson*). And, to our knowledge, none of the remaining circuit courts of appeal has held differently.[3]

In sum, the police acted in good faith in searching Petitioner's cell phone. The Circuit Court, therefore, properly denied Petitioner's motion to suppress the text messages on his cell phone that were the product of that search.

II.

Petitioner elected to waive a jury trial in favor of a trial before the court on an agreed statement of facts. The court engaged in a colloquy with Petitioner, pursuant to the dictates of Md. Rule 4-246(b),[4] to ascertain whether he understood his right to a jury trial and

---

[3] Our research discloses only a few reported decisions at the lower level of the federal courts that reach the same conclusion, *United States v. Mitchell*, No. 3:13-CR-128-L-1, 2015 WL 437673 (N.D. Tex. Feb. 2, 2015); *United States v. Caldwell*, No. 1:13-CR-128, 2015 WL 179583 (E.D. Tenn. Jan. 14, 2015); *United States v. Clark*, 29 F. Supp. 3d 1131 (E.D. Tenn. 2014); *United States v. Spears*, 31 F. Supp. 3d 869 (N.D. Tex. 2014); *United States v. Garcia*, 68 F. Supp. 3d 1113 (N.D. Cal. 2014); *United States v. Miller*, 50 F. Supp. 3d 717 (D. Md. 2014). *Cf. United States v. Eisenhour*, 44 F. Supp. 3d 1028, 1032 (D. Nev. 2014) (suppressing evidence seized in the warrantless search of a cell phone on the ground that there was no binding precedent in the Ninth Circuit "explicitly rul[ing] that digital data on a cell phone can be searched incident to arrest").

[4] Md. Rule 4-246(b) reads:

> **Procedure for acceptance of waiver.** A defendant may waive the right to a trial by jury at any time before the commencement of trial. The court may not accept the waiver until, after an examination of the defendant on the record in open court conducted by the court, the State's Attorney, the attorney for the defendant, or any combination thereof, the court determines and announces on the record that the waiver is made knowingly and voluntarily.

voluntarily desired to waive that right. Following that colloquy, Petitioner declared his wish to waive a jury trial. The court accepted Petitioner's waiver, stating that it was "freely and voluntarily given." The court did not announce on the record a finding that Petitioner's waiver was made "knowingly and voluntarily," as required by Rule 4-246(b).

Petitioner argues that the court's violation of Rule 4-246(b) requires reversal of the judgment of conviction. Petitioner acknowledges our holdings in *Nalls v. State*, 437 Md. 674, 693-94 (2014), and *Szwed v. State*, 438 Md. 1, 5 (2014), that, in order to preserve for appellate review a claim of non-compliance with Maryland Rule 4-246(b), the defense is required to object at the time of the waiver inquiry. Petitioner argues nonetheless that we should not apply that holding here because it was not clear, prior to *Nalls*, that a contemporaneous objection was required.

The State urges us either to dismiss this claim, on the ground that we granted certiorari on this question improvidently, or to refuse to review the claim, under Maryland Rule 8-131(a),[5] for want of a contemporaneous objection. We shall take the latter course of action proposed by the State.

---

[5] Md. Rule 8-131(a) reads:

> **Generally.** The issues of jurisdiction of the trial court over the subject matter and, unless waived under Rule 2-322, over a person may be raised in and decided by the appellate court whether or not raised in and decided by the trial court. Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court, but the Court may decide such an issue if necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal.

We made it perfectly clear in *Nalls* that a claimed failure of the court to adhere strictly with the requirements of Rule 4-246(b) requires a contemporaneous objection in order to be challenged on appeal. 437 Md. at 684. *Nalls* involved two separate cases, *Nalls v. State*, No. 54, Sept. Term, 2013, and *Melvin v. State*, No. 95, Sept. Term, 2013, which we consolidated for purposes of our opinion. We exercised our discretion in each of those cases to reach the merits of near-identical, *unpreserved* claims of error (claims that were much like the claim of error here). *See also Szwed*, 438 Md. at 5. We did so in order to clarify the misconception, held by petitioners Nalls and Melvin, that this Court had "created an exception to the general contemporaneous objection requirement to preserve an issue for appeal[]" in an earlier decision, *Valonis v. State*, 431 Md. 551 (2013). *Id.* We made clear in *Nalls*, 437 Md. at 693-94, that *Valonis* is not to be understood as creating such an exception from the requirement of a contemporaneous objection, set forth in Rule 8-131(a), for claimed violations of Rule 4-246(b). In short, we did not create in *Nalls* a "change in procedure," as Petitioner contends; on the contrary, we reinforced in that case what long has been the preservation rule, set forth in the plain language of Rule 8-131(a), which requires a contemporaneous objection.

Petitioner, by failing to object at the time the court accepted his waiver of his right to a jury trial, has failed to preserve his claim of error for this Court's review. We therefore do not consider the claim.

> **JUDGMENT OF THE CIRCUIT COURT FOR CAROLINE COUNTY AFFIRMED; COSTS TO BE PAID BY PETITIONER.**

15