**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 12-4625

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

HENRY STEPHENS,

Defendant – Appellant.

Appeal from the United States District Court for the District of Maryland, at Baltimore. James K. Bredar, District Judge. (1:11-cr-00447-JKB-1)

Argued: October 30, 2013          Decided: August 19, 2014

Before SHEDD and THACKER, Circuit Judges, and HAMILTON, Senior Circuit Judge.

Affirmed by published opinion. Judge Shedd wrote the majority opinion, in which Senior Judge Hamilton joined. Judge Thacker wrote a dissenting opinion.

**ARGUED:** Christopher Ford Cowan, LAW OFFICE OF CHRIS F. COWAN, Columbus, Ohio, for Appellant. Albert David Copperthite, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee. **ON BRIEF:** Rod J. Rosenstein, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.

SHEDD, Circuit Judge:

Convicted of illegal firearm possession, Henry Stephens contends that the district court erroneously denied his pretrial motion to suppress evidence. Caselaw decided after Stephens was indicted tends to establish that the search at issue is unreasonable under the Fourth Amendment, but we are not now concerned with the legality of the search. Rather, we must decide the separate issue of whether the district court correctly declined to apply the exclusionary rule because the search was conducted in "good faith." Our consideration of this issue requires us to answer "the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal in light of all of the circumstances." Herring v. United States, 555 U.S. 135, 145 (2009) (citation and internal punctuation omitted). Because we find that the search was "conducted in objectively reasonable reliance on binding appellate precedent," Davis v. United States, 131 S.Ct. 2419, 2423-24 (2011), the answer to this question is "yes." Therefore, the exclusionary rule does not apply, and we affirm Stephens' conviction.

I

The underlying facts are not disputed. In 2011, federal and state law enforcement officers in the Baltimore area were investigating Stephens for possible drug and firearms crimes.

The investigation began as a result of information provided by a registered confidential informant, and it was spearheaded by Officer Paul Geare, who was a 13-year veteran of the Baltimore Police Department. Officer Geare was also deputized as an ATF agent and assigned to a "High Intensity Drug Trafficking Area" ("HIDTA") task force unit, which was "a hybrid unit of federal agents as well as city police officers" operating pursuant to Baltimore City and HIDTA guidelines. J.A. 405. The HIDTA joint task force is "organized to conduct investigations into drug and gun violations of <u>both</u> federal and state law, and its investigations indeed [lead] to both federal and state prosecutions, determined on the basis of the facts uncovered." <u>United States v. Claridy</u>, 601 F.3d 276, 283 (4th Cir.), <u>cert. denied</u>, 131 S.Ct. 259 (2010) (emphasis in original).

On May 13, 2011, Officer Geare – acting without a warrant – installed a battery-powered Global-Positioning-System device ("GPS") under the rear bumper of Stephens' vehicle, which was parked in a public lot in Parkville, Maryland.[1] Officer Geare had information that Stephens was a convicted felon, that he would be working security at a nightclub known as "Club Unite" on the

---

[1] In March 2011, Officer Geare installed the GPS on Stephens' vehicle without a warrant, and it remained on the vehicle for several weeks. Officer Geare testified that the GPS probably had been removed because the battery was getting low.

evening of May 16, and that he usually carried a firearm when he worked there. With this knowledge, Officer Geare – in conjunction with other officers - implemented a plan to detain Stephens and search him on May 16 at Club Unite.

During the evening of May 16, Officer Geare used the GPS to locate Stephens' vehicle at an area school. Officer Geare and another city police officer (Sergeant Johnson) then observed and followed Stephens as he drove the vehicle to his residence. Before Stephens left the residence to drive to Club Unite, Officer Geare and Sergeant Johnson saw Stephens, who was standing outside his vehicle, reach around to the back of his waistband. They interpreted this movement as being a check for a weapon. Based on this and other information they had previously obtained, the officers "had at least reasonable suspicion, if not probable cause, that [Stephens] was armed and was on his way to work at Club Unite." J.A. 520.

When Stephens drove away from his residence, Officer Geare alerted other officers who had been briefed on the plan to go to Club Unite. Using visual observation and a portable laptop computer to monitor the GPS, Officer Geare and Sergeant Johnson followed Stephens' vehicle as he drove on public roads to Club Unite. Upon Stephens' arrival at Club Unite, the officers who had been alerted approached him and conducted a patdown, which revealed an empty holster in the middle of his back. Within a

4

matter of minutes, a Baltimore city police officer arrived and conducted a canine inspection of the vehicle exterior. After the canine alerted, the officers searched the vehicle and found (among other things) a loaded pistol. The officers then arrested Stephens and charged him with one or more state-law crimes. Stephens remained in state custody for approximately three months, until a federal grand jury indicted him for illegal firearm possession by a convicted felon. See 18 U.S.C. § 922(g)(1). After the federal indictment, the state charges were dismissed. See Presentence Report, No. JKB-11-0447, at 1 (D. Md.).[2]

While this case was pending below, the Supreme Court held in United States v. Jones, 132 S.Ct. 945, 949 (2012), that the government's "installation of a GPS device on a target's vehicle, and its use of that device to monitor the vehicle's movements, constitutes a 'search'" within the meaning of the Fourth Amendment. Because the officers in Jones did not have a valid warrant authorizing the GPS usage, the search – i.e., GPS usage – violated the Fourth Amendment. The Court did not, however, rule that all warrantless GPS searches violate the

---

[2] The record does not specify the state charges for which Stephens was arrested. We note, however, that possession of a firearm by a convicted felon is a crime under § 5-133 of the Maryland Public Safety Article.

Fourth Amendment; instead, the Court expressly declined to decide whether reasonable suspicion or probable cause may justify warrantless GPS attachment to vehicles, and that remains an open question. Id. at 954.

Based on Jones, Stephens moved to suppress the firearm and other evidence seized on May 16. Following a hearing, the district court denied the motion. The court concluded that in light of Jones, Officer Geare's warrantless use of the GPS on Stephens' vehicle was an unconstitutional search that led to the seizure of the challenged evidence. However, the court held that the exclusionary rule does not apply because Officer Geare used the GPS in good faith. Thereafter, Stephens entered a conditional guilty plea, reserving the right to appeal the suppression order. See Fed. R. Crim. P. 11(a)(2).

II

In May 2011, at the time of Stephens' arrest and before Jones was decided, it was not uncommon for law enforcement officers in Maryland to attach tracking devices to vehicles without a warrant. See J.A. 364. Indeed, caselaw in our circuit shows that officers in Maryland had been doing so since at least 1976. See United States v. Woodward, 546 F.2d 576 (4th Cir. 1976) (declining to address the defendant's argument that the warrantless attachment of a "beeper" to his truck was an illegal search under the Fourth Amendment). Before Officer Geare

6

attached the GPS to Stephens' vehicle, he had attached a GPS to other vehicles in public areas without a warrant, and it was his understanding that a warrant was needed only when (unlike here) the GPS was wired into the vehicle's battery system. See J.A. 364-65. Consistent with Officer Geare's understanding, the district judge – who had been a United States Magistrate Judge in Maryland for 12 years before being elevated to the district court bench - observed that had Officer Geare applied for a federal warrant to attach a GPS to Stephens' vehicle, it was "quite likely" that "the magistrate judge would have said . . . you don't need a warrant for that." J.A. 454. As we explain below, Officer Geare's and the district judge's understanding of the state of the law as it existed in 2011 is understandable.

The Fourth Amendment provides in relevant part that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." The "threshold question" in every Fourth Amendment case is whether a search or seizure occurred, and "not every observation made by a law enforcement officer – even if consciously intended to disclose evidence of criminal activity – constitutes a search within the meaning of the Fourth Amendment." United States v. Taylor, 90 F.3d 903, 908 (4th Cir. 1996). Rather, a search occurs for constitutional purposes only "when an expectation of privacy that society is prepared to

7

consider reasonable is infringed," United States v. Jacobsen, 466 U.S. 109, 113 (1984), and "[o]fficial conduct that does not compromise any legitimate interest in privacy is not a search subject to the Fourth Amendment," Illinois v. Caballes, 543 U.S. 405, 408 (2005) (citation and internal punctuation omitted). Under this principle, "[w]hat a person knowingly exposes to the public . . . is not a subject of Fourth Amendment protection." Katz v. United States, 389 U.S. 347, 351 (1967).

It was well-established by 2011 that "one's expectation of privacy in an automobile and of freedom in its operation are significantly different from the traditional expectation of privacy and freedom in one's residence." United States v. Martinez-Fuerte, 428 U.S. 543, 561 (1976). In accord with this principle, we recognized in United States v. George, 971 F.2d 1113, 1119 (4th Cir. 1992), that "there can be no reasonable expectation of privacy in a vehicle's exterior." Moreover, we observed in United States v. Gastiaburo, 16 F.3d 582, 586 (4th Cir. 1994), that "it may be reasonable and therefore constitutional to search a movable vehicle without a warrant, even though it would be unreasonable and unconstitutional to conduct a similar search of a home, store, or other fixed piece of property." Further, we noted in United States v. Bellina, 665 F.2d 1335, 1340 (4th Cir. 1981), that "this rule of diminished

8

expectation of privacy is particularly appropriate when the automobile is located in the street or in a public area."

Although neither the Supreme Court nor this Court had expressly approved or disapproved of warrantless GPS usage in 2011, the Supreme Court had rejected a Fourth Amendment challenge to law enforcement officers' use of a beeper, which is the technological forerunner to the GPS. In United States v. Knotts, 460 U.S. 276 (1983), officers had placed a beeper in a container that was later filled with chloroform, which they suspected was being used to make illegal drugs. After the chloroform was purchased, one suspect (Petschen) placed the container in his vehicle, and the officers followed the container by using both visual surveillance of the vehicle and a monitor that received signals from the beeper. The officers eventually obtained a search warrant for Knotts' cabin and premises, which is where the container was delivered, and they discovered a drug-making laboratory. Following his arrest, Knotts unsuccessfully moved to suppress evidence on Fourth Amendment grounds because of the beeper use, and he was convicted on a drug conspiracy charge.

The Court upheld the denial of the suppression motion, holding that the use of the beeper was not a search under the Fourth Amendment. Id. at 285. Noting the diminished expectation of privacy in automobiles, the Court explained that "[a] person

9

traveling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another." Id. at 281. Thus, "[w]hen Petschen travelled over the public streets he voluntarily conveyed to anyone who wanted to look the fact that he was travelling over particular roads in a particular direction, the fact of whatever stops he made, and the fact of his final destination. . . ." Id. at 281-82. Importantly, the Court specifically rejected Knotts' argument concerning the beeper:

> Visual surveillance from public places along Petschen's route or adjoining Knotts' premises would have sufficed to reveal all of these facts to the police. The fact that the officers in this case relied not only on visual surveillance, but on the use of the beeper to signal the presence of Petschen's automobile to the police receiver, does not alter the situation. Nothing in the Fourth Amendment prohibited the police from augmenting the sensory faculties bestowed upon them at birth with such enhancement as science and technology afforded them in this case.

Id. at 282. Although the Court left open the possibility that a different rule may apply in a future case for "dragnet-type law enforcement practices," it observed that to the extent that Knotts' argument was "simply that scientific devices such as the beeper enabled the police to be more effective in detecting crime, it simply has no constitutional foundation." Id. at 284.[3]

---

[3] We upheld the constitutionality of technology-enhanced extended surveillance of public areas in United States v. Vankesteren, 553 F.3d 286 (4th Cir.), cert. denied, 556 U.S. (Continued)

10

Knotts involved the use of a beeper, but it "was widely and reasonably understood to stand for the proposition that the Fourth Amendment simply was not implicated by electronic surveillance of public automotive movements." United States v. Sparks, 711 F.3d 58, 67 (1st Cir. 2013); see also United States v. Aguiar, 737 F.3d 251, 261 (2d Cir. 2013) ("Knotts stood for the proposition that the warrantless use of a tracking device to monitor the movements of a vehicle on public roads did not violate the Fourth Amendment."). Although we had not been presented with the issue directly, we interpreted Knotts, in conjunction with the subsequent case of United States v. Karo, 468 U.S. 705 (1984),[4] as standing for the proposition that

---

1269 (2009), where the defendant sought to exclude evidence obtained by the government's use of a hidden, motion-activated video camera recording his open field. We noted that the "idea of a video camera constantly recording activities on one's property is undoubtedly unsettling to some," but government agents could have personally monitored the area over a continuous period without violating the Fourth Amendment, and the fact that they "chose to use a more resource-efficient surveillance method [did] not change our Fourth Amendment analysis." Id. at 291.

[4] In Karo, government agents installed a beeper inside a container and used the beeper to track the movement of the container to various locations, including a number of private residences. The Court agreed that using the beeper to monitor the movement of the container within private residences violated the Fourth Amendment. The Court distinguished Knotts because the beeper was used in that case only to locate the container as it traveled on public roads.

"monitoring of a beeper falls within the ambit of the Fourth Amendment when it reveals a critical fact about the interior of premises that could not have been obtained through visual surveillance." United States v. Jones, 31 F.3d 1304, 1310 (4th Cir. 1994) (citation and internal punctuation omitted).

Moreover, Knotts was considered to be the "foundational Supreme Court precedent for GPS-related cases." United States v. Cuevas-Perez, 640 F.3d 272, 273 (7th Cir. 2011). Based on Knotts, several federal appellate courts held before 2011 that the warrantless use of a GPS to track the location of a vehicle did not necessarily violate the Fourth Amendment. See, e.g., United States v. Pineda-Moreno, 591 F.3d 1212, 1215-17 (9th Cir. 2010) (GPS installation and use is not a search);[5] United States v. Marquez, 605 F.3d 604, 610 (8th Cir. 2010) (GPS installation and use requires only reasonable suspicion); United States v. Garcia, 474 F.3d 994, 997-98 (7th Cir. 2007) (GPS installation and use is not a search); but see United States v. Maynard, 615 F.3d 544, 555-60 (D.C. Cir. 2010) (prolonged GPS surveillance is a search).[6] Two months after Stephens was arrested, the Fifth

---

[5] Both Pineda-Moreno and Cuevas-Perez were later vacated and remanded for further consideration in light of the Supreme Court's 2012 Jones decision. See 132 S.Ct. 1533-34 (2012).

[6] In August 2010, the United States Department of Justice issued an internal email opining that Maynard was "fundamentally wrong and incompatible with established Fourth Amendment (Continued)

12

Circuit relied on Knotts and its own prior precedent relating to beeper usage to hold that the warrantless placement and usage of a GPS on a vehicle was not a search under the Fourth Amendment. See United States v. Hernandez, 647 F.3d 216, 220-21 (5th Cir. 2011). Thus, a significant body of federal law existed nationally in 2011 to support the view that warrantless attachment of a GPS to a vehicle was not a search within the meaning of the Fourth Amendment or was permissible when officers possessed reasonable suspicion that criminal activity was afoot.[7]

Consistent with this body of federal law, the Court of Special Appeals of Maryland had expressly found in 2008 that warrantless GPS usage was permissible under the Fourth Amendment. In Stone v. State, 941 A.2d 1238 (Md. App. 2008), Maryland law enforcement officers who were investigating Stone for burglary attached a GPS to his truck, and they later used information from the GPS to locate and arrest him. During a

principles." See United States v. Wilford, 2013 WL 6211741, at *39 (D. Md. 2013) (quoting the email).

[7] Courts also applied Knotts in cases involving similar surveillance methods. For example, in United States v. Forest, 355 F.3d 942 (6th Cir. 2004), agents monitored cell phone site data to track the defendant's movements along a public highway. The court held that the defendant "had no legitimate expectation of privacy in his movements along public highways," and therefore the agents did not conduct a search within the meaning of the Fourth Amendment. Id. at 951.

pretrial suppression hearing, Stone's counsel sought to cross-examine one of the officers concerning the GPS in order to establish that the GPS usage violated his Fourth Amendment rights. The trial court disallowed the cross-examination, and Stone appealed.

Relying primarily on Knotts, the Court of Special Appeals affirmed the trial court, concluding that it "did not abuse its discretion in cutting short the appellant's cross-examination about . . . the GPS tracking device because it was unlikely that cross-examination on those points would have produced any relevant evidence." Id. at 1249. The court noted that the GPS was "simply the next generation of tracking science and technology from the radio transmitter 'beeper' in Knotts, to which the Knotts Fourth Amendment analysis directly applies," and it stated that "the use of the GPS device could not be a Fourth Amendment violation, and hence further inquiry about it [on cross-examination] would not have led to relevant information." Id. at 1250. Explaining this decision, the court observed:

> [Stone] did not have a reasonable expectation of privacy in his location in the public, and, more specifically, in a vehicle riding on public roads, and therefore evidence about the use of the GPS device . . . merely to locate him in public, which just as well could have been done by human visualization — though less efficiently — was not relevant to [his] Fourth Amendment-based suppression motion.

14

<u>Id.</u> at 1250-51.

Recently, in <u>Kelly v. State</u>, 82 A.3d 205, (Md. 2013), the Maryland Court of Appeals resolved any doubt about the state of the law that existed in Maryland in 2011. The court held that "before <u>Jones</u>, binding appellate precedent in Maryland, namely <u>Knotts</u>, authorized the GPS tracking of a vehicle on public roads." <u>Id.</u> at 216. The court explained that before <u>Jones</u>, it would have applied <u>Knotts</u> like the Court of Special Appeals had done in <u>Stone</u>, "to resolve the question of the constitutionality of GPS tracking of a vehicle on public roads." <u>Id.</u> For this reason, the court held that "just as the Court of Special Appeals applied <u>Knotts</u>, pre-<u>Jones</u>, when considering the relevance of testimony on the subject of GPS tracking of a vehicle on public streets in <u>Stone</u>, so too could police officers reasonably rely on <u>Knotts</u>, pre-<u>Jones</u>, in affixing a GPS tracking device to the vehicle of a person under their investigation for the purpose of conducting surveillance." <u>Id.</u>

III

For purposes of this appeal, we accept the district court's ruling that Officer Geare's use of the GPS to locate and follow Stephens in May 2011 was an unreasonable search under the Fourth Amendment that led directly to the seizure of the evidence from Stephens' vehicle and his arrest. Starting from this premise, we must decide the separate question of whether the exclusionary

15

rule renders the evidence inadmissible.[8] Because the facts are not disputed, this question involves a pure legal conclusion, and we review the district court's ruling de novo. See United States v. DeQuasie, 373 F.3d 509, 520 (4th Cir. 2004).

A.

The Supreme Court created the exclusionary rule "to safeguard against future violations of Fourth Amendment rights through the rule's general deterrent effect." Arizona v. Evans, 514 U.S. 1, 10 (1995). The exclusionary rule "generally prohibits the introduction at criminal trial of evidence obtained in violation of a defendant's Fourth Amendment rights," Pennsylvania Bd. of Prob. & Parole v. Scott, 524 U.S. 357, 359 (1998), but the "sole purpose" of the rule "is to deter future Fourth Amendment violations," Davis v. United States, 131 S.Ct. 2419, 2426 (2011), and its application "properly has been restricted to those situations in which its remedial purpose is effectively advanced," Illinois v. Krull, 480 U.S. 340, 347 (1987). As the Court has recently made clear, the exclusionary rule is not a "strict liability regime," Davis, 131 S.Ct. at 2429, and exclusion of evidence has "always been [the] last

---

[8] We decline to address the government's argument that Officer Geare's use of the GPS was permissible under the reasonable suspicion standard because the government conceded below the illegality of the search under Jones. See J.A. 448-50.

16

resort, not [the] first impulse." Hudson v. Michigan, 547 U.S. 586, 591 (2006).

"Exclusion exacts a heavy toll on both the judicial system and society at large," because it "almost always requires courts to ignore reliable, trustworthy evidence bearing on guilt or innocence," and "its bottom-line effect, in many cases, is to suppress the truth and set the criminal loose in the community without punishment." Davis, 131 S.Ct. at 2427. In order for the exclusionary rule "to be appropriate, the deterrence benefits of suppression must outweigh its heavy costs." Id. "Police practices trigger the harsh sanction of exclusion only when they are deliberate enough to yield meaningful deterrence, and culpable enough to be worth the price paid by the justice system." Id. at 2428 (citation and internal punctuation omitted). Therefore, the exclusionary rule is applicable "[w]hen the police exhibit deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights, [and] the deterrent value of exclusion is strong and tends to outweigh the resulting costs." Id. at 2427 (citations and internal punctuation omitted).

However, "when the police act with an objectively reasonable good-faith belief that their conduct is lawful, or when their conduct involves only simple, isolated negligence, the deterrence rationale loses much of its force, and exclusion

17

cannot pay its way." Id. at 2427-28 (citations and internal punctuation). The "pertinent analysis of deterrence and culpability is objective, not an inquiry into the subjective awareness of arresting officers," and the "good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal in light of all of the circumstances." Herring, 555 U.S. at 145 (internal punctuation omitted).[9]

Conducting the good-faith inquiry, the Supreme Court has found the exclusionary rule to be inapplicable in a variety of circumstances involving Fourth Amendment violations. See, e.g., United States v. Leon, 468 U.S. 897 (1984) (where police conducted a search in reasonable reliance on a warrant that was

---

[9] The good-faith inquiry is often referred to as the good-faith "exception" to the exclusionary rule. However, given the manner in which the Supreme Court has limited the application of the exclusionary rule, some commentators have questioned the accuracy of labeling the exclusionary rule as the "rule" and the good-faith inquiry as the "exception." See, e.g., Michael D. Cicchini, An Economics Perspective on the Exclusionary Rule and Deterrence, 75 Mo. L. Rev. 459, 462 (2010) (observing that Herring "makes the exclusionary rule a misnomer; in fact, when exclusion is treated as a last resort, it would be far more accurate to label it the exclusionary exception rather than the rule"); Matthew A. Josephson, To Exclude or Not To Exclude: The Future of the Exclusionary Rule After Herring v. United States, 43 Creighton L. Rev. 175, 177 (2009) ("The Herring decision could transform the exclusionary rule by making the exclusion of evidence the exception rather than the rule when police violate the Fourth Amendment.").

later held invalid); Krull (where police conducted a search in reasonable reliance on subsequently invalidated state statutes); Evans (where police reasonably relied on erroneous information in a database maintained by judicial employees); Herring (where police reasonably relied on erroneous information in a database maintained by police employees). Our precedent makes it clear that application of the good-faith inquiry is not limited to the specific circumstances addressed by the Supreme Court. For example, in United States v. Davis, 690 F.3d 226, 251-57 (4th Cir. 2012), cert. denied, 134 S.Ct. 52 (2013), we held that the exclusionary rule did not apply where officers engaged in an unconstitutional search by extracting and testing the defendant's DNA sample during a murder investigation without a warrant. We explained that the Supreme Court's "recent decisions applying the exception have broadened its application, and lead us to conclude that the Fourth Amendment violations here should not result in application of the exclusionary rule." Id. at 251.[10]

---

[10] In Davis, the majority stated that it was faithfully following Supreme Court precedent by applying "the rationale supporting the Court's application of the good-faith [inquiry]," and it rejected the dissenting judge's argument that it was creating a "new, freestanding exception" to the exclusionary rule. 690 F.3d at 256 n.34.

B.

As we have noted, "the good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal in light of all of the circumstances." Herring, 555 U.S. at 145 (citation and internal punctuation omitted). In Davis, the Supreme Court answered this question in one specific circumstance, holding that "searches conducted in objectively reasonable reliance on binding appellate precedent are not subject to the exclusionary rule." 131 S.Ct. at 2423-24. As the Court explained: "An officer who conducts a search in reliance on binding appellate precedent does no more than act as a reasonable officer would and should act under the circumstances. The deterrent effect of exclusion in such case can only be to discourage the officer from doing his duty." Id. at 2429 (citations and internal punctuation omitted). Thus, if "binding appellate precedent" allowing warrantless GPS usage existed in May 2011, and if it was objectively reasonable for a reasonably well-trained officer to rely on that precedent, then Davis controls, and the exclusionary rule is inapplicable.

Despite the ample body of federal law existing in 2011 that supported warrantless GPS usage similar to what happened in this case, Stephens contends that none of those cases was binding precedent in the Fourth Circuit and, for that reason, the

20

exclusionary rule must apply. In essence, Stephens relies on a negative implication: in his view, the Davis Court's application of the good-faith inquiry in the specific circumstance where an officer has reasonably relied on binding appellate precedent precludes application of the good-faith inquiry in the slightly different context where an officer reasonably relied on non-binding precedent, no matter how extensive and well-developed that precedent may be.

We have serious doubts about Stephens' narrow view of the good-faith inquiry. Nothing in Davis itself supports such an interpretation. Instead, Davis merely establishes the inapplicability of the exclusionary rule in one specific circumstance. Davis does not, however, alter the general good-faith inquiry which, we reiterate, requires consideration of whether a reasonably well-trained officer would have known that a search was illegal in light of all of the circumstances. See generally Leon, 468 U.S. at 918 (noting that "suppression of evidence . . . should be ordered only on a case-by-case basis"). Moreover, as noted, we have not previously limited the good-faith inquiry only to the precise factual circumstances addressed by the Supreme Court.[11]

---

[11] A simple hypothetical highlights the weakness of Stephens' position. Returning to the days before the Supreme Court decided Jones, we assume that every other federal
(Continued)

21

Stephens' narrow interpretation of <u>Davis</u> presents an interesting issue, but one that is ultimately unnecessary for us to decide. As we explain below, under the facts of this case the rule announced in <u>Davis</u> directly controls: Officer Geare's use of the GPS was objectively reasonable because of the binding appellate precedent of <u>Knotts</u>.

C.

In May 2011, before <u>Jones</u>, neither the Supreme Court nor this Court had expressly approved or disapproved of warrantless GPS usage. However, in 1983, the Supreme Court held in <u>Knotts</u>

---

appellate court in the country had found warrantless GPS usage to be constitutional in published opinions, and we had done so in an unpublished opinion. Under Stephens' position, evidence obtained by an officer in this circuit as a result of warrantless GPS usage would have to be suppressed because neither the out-of-circuit opinions nor our unpublished opinion are binding appellate precedent. To accept that view, a court would necessarily have to hold that even with this universal, but non-binding, precedent that was directly on point, a reasonably well-trained officer would have known that the search was illegal in light of all of the circumstances.

We also note that Stephens' view appears to run counter to the manner in which the Supreme Court has examined objective reasonableness in the analogous context of qualified immunity. <u>See, e.g.</u>, <u>Pearson v. Callahan</u>, 555 U.S. 223, 244-45 (2009) ("The officers here were entitled to rely on these cases, even though their own Federal Circuit had not yet ruled on 'consent-once-removed' entries. . . . Police officers are entitled to rely on existing lower court cases without facing personal liability for their actions."); <u>Wilson v. Layne</u>, 526 U.S. 603, 617-18 (1999) ("Given such an undeveloped state of the law, the officers in this case cannot have been expected to predict the future course of constitutional law." (citation and internal punctuation omitted)).

22

that the use of a beeper to track a vehicle was not a search under the Fourth Amendment. In doing so, the Court explained that "[a] person traveling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another," 460 U.S. at 281, and noted that the beeper simply conveyed to the public what was evident from visual surveillance.

Knotts is not exactly on point with the facts of this case, but it is the legal principle of Knotts, rather than the precise factual circumstances, that matters. See South Dakota v. Opperman, 428 U.S. 364, 375 (1976) (noting that "in all Fourth Amendment cases, we are obliged to look to all the facts and circumstances of this case in light of the principles set forth in . . . prior decisions"); United States v. LaBinia, 614 F.2d 1207, 1210 (9th Cir. 1980) (noting that "it is a general rule that unless the Supreme Court expressly limits its opinion to the facts before it, it is the principle which controls and not the specific facts upon which the principle was decided" (citation and internal punctuation omitted)). In this regard, we reiterate that in conjunction with the general legal landscape that existed before Jones, "Knotts was widely and reasonably understood to stand for the proposition that the Fourth Amendment simply was not implicated by electronic surveillance of public automotive movements," Sparks, 711 F.3d at 67, and it

23

was the "foundational Supreme Court precedent for GPS-related cases," Cuevas-Perez, 640 F.3d at 273.

After Jones, we know that such an interpretation of Knotts is incorrect. Without the benefit of hindsight, however, and with no contrary guidance from the Supreme Court or this Court, we believe that a reasonably well-trained officer in this Circuit could have relied on Knotts as permitting the type of warrantless GPS usage in this case. See Aguiar, 737 F.3d at 262 (in declining to apply the exclusionary rule, the court stated that "sufficient Supreme Court precedent existed at the time the GPS device was placed for the officers here to reasonably conclude a warrant was not necessary in these circumstances").

Our decision extends to all law enforcement officers within this Circuit as a matter of federal law, but it is bolstered in this case by the Maryland Court of Appeals' holding in Kelly that Knotts was binding appellate precedent in Maryland under Davis and, therefore, Maryland police officers could "reasonably rely on Knotts, pre-Jones, in affixing a GPS tracking device to the vehicle of a person under their investigation for the purpose of conducting surveillance." Kelly, 82 A.3d at 216.[12] To

---

[12] "[S]tate law is irrelevant for determining in the first instance whether fruits of a search are admissible in federal court under the Fourth Amendment, [but] state law is relevant when the analysis proceeds to the question of admitting unconstitutionally seized evidence under [the] good faith (Continued)

24

be sure, Officer Geare worked on the HIDTA task force and was deputized as a federal agent, but he was also a Baltimore City police officer. In this dual role, Officer Geare was investigating both federal and state crimes, and his investigation led to Stephens' arrest for violating Maryland law. Under these circumstances, we would make a mockery of the good-faith inquiry if we were to ignore the clear pre-Jones state of the law in Maryland – as pronounced by Maryland's highest court – and hold that a Maryland officer's use of the GPS was objectively unreasonable. The fact that Stephens was later charged federally does not alter our determination.[13]

---

exception to the exclusionary rule." United States v. Maholy, 1 F.3d 718, 722 (8th Cir. 1993).

[13] Stephens contends that the HIDTA investigation was federal and that Maryland law is irrelevant. However, the facts do not establish that the investigation was exclusively federal, and our precedent regarding joint federal-state investigations undercuts Stephens' argument. As we have explained, when "federal and state agencies cooperate and form a joint law-enforcement effort, investigating violations of both federal and state law, . . . [s]uch an investigation is conducted on behalf of both sovereigns, and its object is to reveal evidence of crime - be it federal crime or state crime." Claridy, 601 F.3d at 282. Moreover, "in the initial stages of a criminal investigation, it may be anything but clear whether the conduct being investigated violates state law, federal law, or both," United States v. Self, 132 F.3d 1039, 1043 (4th Cir. 1997), and "the decision with respect to the court in which charges are to be brought is often made by the Office of the United States Attorney and the state prosecutor, not the investigating officer," Claridy, 601 F.3d at 282. Thus, the "possibility, even likelihood, of the federal government also bringing charges for (Continued)

IV

Based on the foregoing, we find no basis to set aside the order denying Stephens' suppression motion. Accordingly, we affirm the conviction.

AFFIRMED

---

the same underlying facts as the original state arrest does not suddenly cause state officers to stop performing their duties," United States v. Taylor, 240 F.3d 425, 428 (4th Cir. 2001), and the fact that "federal officers were present, assisting in the arrest of the defendant by the state officers and that they cooperated with the state officers in the investigation that led up to the arrests has never been held in any case to render the state arrest federal," United States v. Iaquinta, 674 F.2d 260, 268 (4th Cir. 1982) (emphasis in original).

THACKER, Circuit Judge, dissenting:

"When law enforcement officers rely on precedent to resolve legal questions as to which '[r]easonable minds . . . may differ,' the exclusionary rule is well-tailored to hold them accountable for their mistakes." United States v. Davis, 598 F.3d 1259, 1267 (11th Cir. 2010), aff'd, 131 S. Ct. 2419 (2011) (quoting United States v. Leon, 468 U.S. 897, 914 (1984)). Clearly then, the exclusionary rule is well-tailored to hold accountable the law enforcement officers in this case who relied on non-binding, non-precedential authority regarding emerging technology -- without first bothering to seek legal guidance -- in order to conduct a warrantless search which spanned a period of nearly two months.

Therefore, with all due respect to my colleagues in the majority, I dissent.

I.

In this case, federal and state law enforcement officers conducted surveillance to track the whereabouts of Appellant's vehicle via the installation of a global positioning system ("GPS") device. The officers used a battery operated GPS device affixed to the undercarriage of Appellant's vehicle to track his movements 24 hours a day, resulting in a catalog of data detailing the vehicle's location for nearly two months from

27

March 20 to April 12, 2011, and again from May 13 to May 16, 2011.

They did so without obtaining a search warrant, despite the fact that no urgent or exigent circumstance existed. Indeed, in the words of one of the officers, "the investigation was taking too long," and officers "were spending too much time dragging it out." J.A. 374.[1]

They did so without consulting the United States Attorney's Office regarding the legality of such a search, despite the fact that there was no binding appellate precedent authorizing their actions, and there was clear indication that the law in this regard was not settled, but rather, in a state of flux.

Eight months later, the Supreme Court ruled such conduct to be in violation of the Fourth Amendment. On January 23, 2012, the Supreme Court ruled that the Government's installation of a GPS device on the undercarriage of a target's vehicle while it was parked in a public parking lot, "and its use of that device to monitor the vehicle's movements, constitute[d] a search" under the Fourth Amendment. United States v. Jones, 132 S. Ct. 945, 949 (2012) (internal quotation

---

[1] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

marks omitted).  In light of the <u>Jones</u> decision, the district court invited Appellant to file a motion for reconsideration of his motion to suppress, which the district court had initially denied.  Ultimately, the district court ruled that, per <u>Jones</u>, the use of the GPS tracking device in this case was illegal, but the officers acted in good faith, and the purpose of the exclusionary rule would not be advanced if the evidence were to be suppressed.[2]

## II.

It is a fundamental tenet of the Fourth Amendment that warrantless searches are per se unreasonable, "subject only to a few specifically established and well-delineated exceptions." <u>Katz v. United States</u>, 389 U.S. 347, 357 (1967).  The text of the Fourth Amendment provides protection from unreasonable searches and seizures of "persons, houses, papers, and effects." U.S. Cont. amend. IV.  As the Supreme Court recognized, "[t]he

---

[2] The Government conceded below the illegality of the search.  J.A. 450-51 ("THE COURT:  And the use of the GPS was illegal.  [GOVERNMENT COUNSEL]: And, yes, that is correct. That's what the Supreme Court has said.").  Curiously, the Government now attempts to reverse course before us and argue that a warrant was not needed for the search because the officers had a reasonable suspicion Appellant was engaged in illegal activity.  Appellee's Br. 23 ("Installation and use of a slap-on GPS tracking device is such a limited intrusion that it should be justified based upon reasonable suspicion.").

text of the Fourth Amendment reflects its close connection to property." United States v. Jones, 132 S. Ct. 945, 949 (2012).

Although the Fourth Amendment protects the right to be free from unreasonable searches and seizures, it "is silent about how this right is to be enforced. To supplement the bare text, [the Supreme] Court created the exclusionary rule, a deterrent sanction that bars the prosecution from introducing evidence obtained by way of a Fourth Amendment violation." Davis v. United States, 131 S. Ct. 2419, 2423 (2011). The Court has repeatedly held that the exclusionary rule's sole purpose "is to deter future Fourth Amendment violations." Id. at 2426. Exclusion of evidence collected by unconstitutional means is "not a personal constitutional right, nor is it designed to redress the injury occasioned by an unconstitutional search." Id. (internal quotation marks omitted). Rather, it is designed to safeguard the continued vitality of the Fourth Amendment.

The deterrent function of the exclusionary rule necessarily requires us to consider the "culpability of the law enforcement conduct at issue. When the police exhibit deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting costs." Davis, 131 S. Ct. at 2427 (internal quotation marks and citations omitted). Therefore, "[t]o trigger the exclusionary rule, police conduct

30

must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." Herring v. United States, 555 U.S. 135, 144 (2009).

Based on this rationale, the Supreme Court created a "good faith" exception to the exclusionary rule, which applies when law enforcement officers "act with an objectively 'reasonable good-faith belief' that their conduct is lawful." Davis, 131 S. Ct. at 2427 (quoting United States v. Leon, 468 U.S. 897, 909 (1984)). The Court has applied the good faith exception to evidence obtained by law enforcement officers who acted in objectively reasonable reliance upon a search warrant issued by a neutral magistrate, but where the warrant was ultimately found to be unsupported by probable cause. See Leon, 468 U.S. at 909. The Court also applied this exception when officers acted in objective reliance upon a state statute ultimately found to violate the Fourth Amendment. See Illinois v. Krull, 480 U.S. 340 (1987). And in Davis, the Court further articulated this exception applies "when the police conduct a search in objectively reasonable reliance on binding appellate precedent." 131 S.Ct. at 2427. None of these factual scenarios are present here.

In Davis, the Court ruled this exception applies, "when the police conduct a search in objectively reasonable

31

reliance on <u>binding</u> appellate precedent." <u>Davis</u>, 131 S. Ct. at 2434 (emphasis supplied). In further explaining this holding, the Court stated, "when binding appellate precedent specifically <u>authorizes</u> a particular police practice, well-trained officers will and should use that tool to fulfill their crime-detection and public-safety responsibilities." <u>Id.</u> at 2429 (emphasis in original). Thus, <u>Davis</u> carves out a very specific and narrow articulation of circumstances in which the good faith exception to the exclusionary rule applies: when officers conduct a search in objectively reasonable reliance on <u>binding appellate precedent specifically authorizing</u> their conduct. <u>See</u> <u>id.</u> <u>Davis</u> did not, however, answer "the markedly different question whether the exclusionary rule applies when the law governing the constitutionality of a particular search is unsettled." <u>Id.</u> at 2435 (Sotomayor, J., concurring).

When presented with the question below as to whether the good faith exception applied in the circumstance presented by this case, the district court denied Appellant's motion to suppress determining that "the purposes of the [e]xclusionary [r]ule would just not be achieved in any way whatsoever if suppression was ordered." J.A. 479. The district court determined that the conduct of the law enforcement officers was in good faith and "passes muster." <u>Id.</u> In so concluding, the district court relied on <u>United States v. Michael</u>, 645 F.2d 252,

32

257 (5th Cir. 1981) (en banc), and Krull, 480 U.S. 340, as proof that the law surrounding the nonconsensual, warrantless installation of an electronic tracking device was settled before Jones, 132 S. Ct. 945.

In Michael, the Fifth Circuit held that the nonconsensual, warrantless installation of a beeper on the defendant's van did not violate the Fourth Amendment even if it was a search. 645 F.2d at 256. In Krull, officers conducted a warrantless search of an automobile wrecking yard pursuant to a state statute authorizing warrantless administrative searches of those licensed to sell motor vehicles or automotive parts. 480 U.S. at 343. The Supreme Court held that the exclusionary rule did not apply to the evidence obtained by the search because the officers acted in objectively reasonable reliance upon the state statute, even though that statute was subsequently found to violate the Fourth Amendment. Id. at 342. In relying on these two cases, the district court determined that beepers and GPS devices were one and the same for purposes of Fourth Amendment analysis.[3] Therefore, the district court concluded that the law

---

[3] Specifically, when discussing the use of a GPS device versus a beeper, the district court stated that GPS monitoring "isn't a new technology. This is old technology. It's 20, 30, 40 years that police officers have been using beepers, transponders, whatever you want to call them, and following them around. And it's not a subject that the [c]ourts haven't previously addressed." J.A. 470. As discussed more fully
(Continued)

was settled and that investigators acted in good faith relying on this settled law "when the beeper was placed on the bumper." J.A. 479. There are three reasons, recognized in Davis, that this analysis is flawed: (1) at the time the warrantless search was conducted in this case, no "binding appellate precedent" existed in this circuit "specifically authoriz[ing]" law enforcement's actions, 131 S. Ct. 2429, 2434; (2) the law in general regarding the warrantless use of GPS devices was not settled, but was, in fact, in a state of flux; and (3) law enforcement officers did not act in an "objectively reasonable" manner, id. at 2429 (quoting Leon, 468 U.S. at 919).

A.

At the time the warrantless search was conducted in this case, no "binding appellate precedent" existed in this circuit "specifically authoriz[ing]" law enforcement's actions, Davis, 131 S. Ct. 2429, 2434. The words "binding appellate precedent" should be given their plain meaning. Id. at 2434. Binding appellate precedent in this circuit means the published opinions of this court and the United States Supreme Court. See, e.g., McBurney v. Young, 667 F.3d 454, 465 (4th Cir. 2012)

_____

below, beepers and GPS devices are not one and the same. Moreover, Krull, 480 U.S. 340, did not involve the use of a beeper at all, let alone a GPS device.

34

("Appellants' reliance on [a Third Circuit opinion] is misplaced for at least two reasons. First, as out-of-circuit authority, it is not binding on this Court."); Hogan v. Carter, 85 F.3d 1113, 1118 (4th Cir. 1996) ("[U]npublished opinions are not even regarded as binding precedent in our circuit . . . ." (citing Local Rule 36(c))). Simply put, opinions of other circuit courts of appeal in general and of the Fifth Circuit Court of Appeals in particular -- such as Michael, 645 F.2d 252, upon which the district court relied -- are not binding precedent in the Fourth Circuit.

Indeed, it is uncontroverted that at the time the warrantless search in this case was conducted, the two appellate courts that bind the District Court of Maryland -- this court and the Supreme Court -- had no precedent specifically authorizing the warrantless use of a GPS device to track a suspect's vehicle or even authorizing the warrantless, nonconsensual installation of a beeper tracking device on a suspect's vehicle.[4] The majority attempts to fill the void left

---

[4] Even if such a case existed relative to beeper tracking devices, I am doubtful installation of a beeper would also "specifically authorize[]" installation of a GPS device. Davis, 313 S. Ct. at 2429. The two are of an entirely different character. A beeper tracking device requires law enforcement to at least be in proximity to the device to receive the transmitted signal, whereas a GPS device downloads location data at specific time intervals with no proximity needed. See, e.g., Jones, 132 S. Ct. at 963-64 (Sotomayor, J., concurring) (Continued)

35

by this absence of binding precedent by describing instead what it calls a "significant body of federal law" and precedent from the Court of Special Appeals of Maryland and the Maryland Court of Appeals supporting the warrantless attachment of a GPS to a vehicle. Ante at 13. But the majority fails to cite any binding appellate precedent specifically authorizing the conduct as required by Davis. The majority focuses instead on United States v. Knotts, 460 U.S. 276 (1983), and United States v. Karo, 468 U.S. 705 (1984). However, reliance on these cases here is misplaced. As discussed below, in both cases, Knotts and Karo, the beeper was placed in a container with the consent of the then-owner, not attached to the undercarriage of the suspect's vehicle without knowledge or consent of the vehicle's owner. Clearly, these cases do not "specifically authorize[]" the nonconsensual, warrantless installation of a GPS device on a suspect's vehicle. Davis, 131 S. Ct. at 2429.

The majority also quotes our decision in United States v. Jones, 31 F.3d 1304 (4th Cir. 1994), for the proposition that we interpreted Knotts and Karo to exclude the use of a beeper tracking device from "the ambit of the Fourth Amendment" unless

(discussing the differences between surveillance using a GPS device and a beeper). In other words, with the use of a GPS device, law enforcement may simply download the data from afar at their leisure, as they did in this case.

"it reveals a critical fact about the interior of premises that could not have been obtained through visual surveillance." Ante at 11-12 (quoting Jones, 31 F.3d at 1310 (internal quotation marks omitted)). However, reliance on this case is also misplaced. In Jones, we were asked to determine "whether the postal inspectors' use of an electronic tracking device to monitor the contents of Jones' van constituted a search forbidden by the Fourth Amendment." Id. at 1309. Relying on Knotts and Karo, we concluded it was not a search because, as in the Supreme Court cases, the beeper tracking device

> was not planted in the van; it was concealed in a mail pouch which belonged to the [G]overnment and in which Jones had no expectation of privacy whatsoever. The mail pouch with the beeper found its way into Jones' van only because Jones stole the pouch and hid it in the van himself.

Id. at 1310. We made sure to illustrate that the facts in Jones did not "raise[] the disturbing specter of [G]overnment agents hiding electronic devices in all sorts of personal property and then following private citizens who own such property as they go about their business," as does the case before us now. Id. at 1311. There was no such danger in Jones, because "the [G]overnment ha[d] placed the electronic device in its own property," and "[o]nly purloiners of such property need fear adverse consequences." Id.

37

Indeed, the Supreme Court's discussion in Jones, 132 S. Ct. 945, of its own beeper cases forecloses the possibility that these cases support the warrantless GPS search in the case at hand. In Jones, the Court identified a critical distinction between its precedent regarding the use of beepers and the case before the Court, which, as here, involved the nonconsensual, warrantless installation of a GPS device on the suspect's vehicle. Id. at 951-52. The Supreme Court observed that in its prior beeper cases, the beepers in question had initially been placed in containers with the consent of the then-owner, and the containers later came into the defendant's possession. See id. (discussing Knotts, 460 U.S. 276, and Karo, 468 U.S. 705); see also United States v. Brown, 744 F.3d 474, 478 (7th Cir. 2014) (deciding the good faith exception applied to the warrantless installation of a GPS device on a vehicle "[b]ecause the GPS unit that played a role in the gathering of evidence against Brown was installed with the consent of the Jeep's owner, Knotts and Karo are 'binding appellate precedent'"). Thus, the Supreme Court described the defendant in Jones as being "on much different footing" than the Knotts and Karo defendants because he actually possessed the vehicle at the time the Government installed the GPS tracker, and he had not consented to its installation. 132 S. Ct. at 952. That is precisely the case here.

38

The Government also argues that the law regarding GPS searches was generally settled before the Supreme Court issued its opinion, and therefore, the main purpose of the exclusionary rule -- to deter future Fourth Amendment violations -- would not be met. According to the Government, "[p]rior to the installation of the GPS tracking devices in this case, the vast majority of decisions had upheld the use of GPS tracking devices without a warrant." Appellee's Br. 29.

First and foremost, Davis sets a higher bar than a simple survey of an amorphous "vast majority of decisions." Appellee's Br. 29. Rather, objectively reasonable reliance on binding appellate precedent specifically authorizing the conduct at issue is the gauge. Beyond this basic premise, the Supreme Court's decision in Jones further undermines the Government's argument. The officers in Jones -- standing on the same pre-Jones legal footing on which the officers in this case stood -- felt compelled to obtain a search warrant in order to attach a GPS device to the target's vehicle. See 132 S. Ct. at 948. In 2005, the officers in Jones, participating in a joint FBI and Metropolitan Police Department Task Force, applied for and received a warrant from the United States District Court for the District of Columbia authorizing the installation of a GPS device on a suspect's vehicle in the District of Columbia within

ten days of the warrant's issue. Id. However, they installed the GPS device outside the restrictions found in the warrant inasmuch as they installed the GPS device on the 11th day and in Maryland, rather than in the District of Columbia. Id. The fact that pre-Jones other officers -- located right next door to the officers in this case no less -- would feel the need to secure a warrant before installing and using a GPS device on a suspect's vehicle certainly casts further doubt on the Government's argument that an officer similarly positioned to the officers here would have reasonably thought the warrantless search in this case was permissive under binding appellate precedent.

To be sure, the Government correctly asserts the main purpose of the exclusionary rule is to deter future Fourth Amendment violations, not to remedy past ones. But, it does not then follow that the district court correctly found there was no police misconduct in this case to be deterred because they acted in conformity with legal norms that were, at the time, "widely accepted." Appellee's Br. 12. Mere conformity with widely accepted legal norms is not the standard, nor should it be. Reliance on past practice in general in order to invade the province of the Fourth Amendment without a firm legal basis is not conscientious police work and is, at minimum, reckless.

40

Because no such binding authority existed in this circuit at the time of the execution of the warrantless search in this case, I conclude that the good faith exception as articulated in Davis is unsuitable here.[5]  Thus, I next turn to whether the good faith exception can apply at all to the factual circumstances of this case -- in other words, whether law enforcement acted in an objectively reasonable manner.  Critical to this analysis is the fact that, contrary to the Government's assertion, the law in this area was not generally accepted or "widely accepted," but, rather, was in a state of flux; so much so that the Supreme Court had accepted the issue for consideration.

---

[5] See also, United States v. Martin, 712 F.3d 1080 (7th Cir. 2013) (per curiam).  Although the Seventh Circuit decided the case on other grounds, it stated that the district court's reliance on Davis was "an unwarranted expansion of the Supreme Court's decision" because "[a]s Justice Sotomayor pointed out in her opinion concurring in the judgment, Davis 'd[id] not present the markedly different question whether the exclusionary rule applies when the law governing the constitutionality of a particular search is unsettled.'"  Martin, 712 F.3d at 1082 (quoting Davis, 131 S. Ct. at 2435 (Sotomayor, J., concurring)). The court emphasized that the good faith exception as pronounced in Davis applies "only to 'a search [conducted] in objectively reasonable reliance on binding appellate precedent.'"  Id. (quoting Davis, 131 S. Ct. at 2434) (emphasis in original).

C.

Law enforcement officers in this case did not act in an "objectively reasonable" manner, Davis at 2429 (quoting Leon, 468 U.S. at 919). The good faith exception at its core requires officers to "act with an objectively 'reasonable good-faith belief' that their conduct is lawful." Davis, 131 S. Ct. at 2427 (quoting Leon, 468 U.S. at 909). The Supreme Court has recognized, "[r]esponsible law-enforcement officers will take care to learn what is required of them under Fourth Amendment precedent and will conform their conduct to these rules." Id. at 2429 (internal quotation marks omitted). I conclude that, here, the officers could not have had an objectively reasonable belief that their conduct was lawful for several reasons.

First, at the time the warrantless search was conducted in this case, the District of Columbia Circuit, neighboring the District of Maryland where the warrantless search here occurred, had determined that a warrantless GPS search violated the Fourth Amendment. See United States v. Maynard, 615 F.3d 544, 549 (D.C. Cir. 2010), aff'd in part sub nom. United States v. Jones, 132 S. Ct. 945 (2012). In fact, at the time the warrantless search was conducted in this case, Maynard had been accepted for argument before the Supreme Court, further undercutting the Government's position here that the issue was generally settled. Additionally, the Maynard case

42

illustrates that as early as 2005, similarly situated officers were obtaining warrants for GPS searches such as the one performed in this case. Nonetheless, officers in this case did not "take care to learn" what was required of them by Fourth Amendment precedent under these circumstances. <u>Davis</u>, 131 S. Ct. at 2429.

Quite the contrary. Detective Geare testified that he did not seek advice from any legal authority regarding the constitutionality of such a search, even though there was no exigent circumstance preventing him from doing so. Appellant's counsel questioned Detective Geare,

> Q   At any point did you call the U.S. Attorney's Office and say, hey, I'm thinking about putting a GPS device on a vehicle without a warrant, should I get one, you never did that, did you?
>
> A  No, not to my recollection.
>
> Q   The U.S. Attorney they were available to you, correct?
>
> A   Sure.
>
> . . .
>
> Q   The person you would talk to if you had legal questions was the U.S. Attorney, correct?
>
> A  Correct.
>
> Q   And you didn't call them in reference to this issue?
>
> A  Correct.

J.A. 422. Instead, Detective Geare testified that in utilizing the GPS device in this case, he relied simply on his own past conduct using GPS devices in prior cases that had resulted in convictions. Detective Geare testified that it was his "understanding" that a warrant was not required when attaching a GPS device on a target's vehicle, and his "belief" that as long as the vehicle was in a public area attaching a GPS device "was fine." J.A. 365. He certainly did not receive such guidance from the United States Attorney's Office because, per his own testimony, he did not bother to ask.

Because law enforcement officers acted with reckless disregard for Appellant's Fourth Amendment rights and failed to act reasonably to "learn what was required of them" under the Fourth Amendment before conducting a warrantless search via the use of a GPS tracking device to monitor Appellant's every movement in his vehicle for a period spanning nearly two months, I cannot conclude that they acted with an objectively reasonable good faith belief that the warrantless GPS search was lawful. Davis, 131 S. Ct.at 2429.

## III.

In light of this era of fast-moving technological advancements and our ever-shrinking zone of privacy, see Riley v. California, 134 S. Ct. 2473 (2014) (holding officers must

44

obtain a warrant before searching a cell phone seized incident to an arrest),[6] law enforcement officers should be deterred from undertaking warrantless searches in situations where, as here, there was no binding appellate precedent authorizing the action, there was no exigent circumstance, and the state of the law was unsettled. The Government must err on the side of the Constitution and obtain a warrant especially as "the disturbing specter of [G]overnment agents hiding electronic devices in all sorts of personal property and then following private citizens who own such property as they go about their business" becomes ever more possible. United States v. Jones, 31 F.3d 1304, 1311 (4th Cir. 1994). In the words of the Seventh Circuit, I "reject the [G]overnment's invitation to allow police officers to rely on a diffuse notion of the weight of authority around the country, especially where that amorphous opinion turns out to be

---

[6] In Riley, the Supreme Court recognized that cell phones, a relatively new technology "inconceivable just a few decades ago," "are now such a pervasive and insistent part of daily life that the proverbial visitor from Mars might conclude they were an important feature of human anatomy." 134 S. Ct. at 2484. The Court further stated, "[t]he fact that technology now allows an individual to carry [private] information in his hand does not make the information any less worthy of the protection for which the Founders fought." Id. at 2495. The Court recognized that its decision "will have an impact on the ability of law enforcement to combat crime;" however, it also emphasized that "[p]rivacy comes at a cost." Id. at 2493.

incorrect in the Supreme Court's eyes." United States v. Martin, 712 F.3d 1080, 1082 (7th Cir. 2013) (per curiam).

I would reverse the judgment of the district court.